BLACKHAWK HOTEL ASSOCIATES, Plaintiff-Appellant, *v.* GERALD S. KAUFMAN, Defendant-Appellee.

First District (2nd Division)   No. 79-16

Opinion filed December 26, 1979.—Rehearing denied February 8, 1980.

Bishop & Crawford, Ltd., of Chicago (John N. Dore and Carl A. Neumann, of counsel), for appellant.

Schwartz, Cooper, Kolb & Gaynor, Chartered, of Chicago (Ira S. Kolb and Martin W. Salzman, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Blackhawk Hotel Associates, Ltd. (Blackhawk), brought this contract action to enforce a written guaranty which provided that upon a lessee's failure to make rent payments as they became due under a lease, defendant, Gerald S. Kaufman (Kaufman), would pay the rental. Kaufman raised the affirmative defense of release pursuant to the terms of the guaranty and the trial court granted his cross motion for summary judgment.

On appeal Blackhawk asks this court to consider whether the words "any sale," as used in a guaranty release provision, are ambiguous and therefore raise a material question of fact precluding the grant of a summary judgment.

Prior to 1976, Blackhawk owned and operated a hotel commonly known as the Blackhawk Hotel, located in Davenport, Iowa. Blackhawk's ownership interest in the hotel was subject to a mortgage held by the Davenport Bank and Trust Company. On December 29, 1975, Blackhawk agreed to lease its interest in the hotel to Knightsbridge Hotels of Iowa, Ltd. (Knightsbridge). The 30-year lease provided, *inter alia*, the following rental terms:

"Article IV, Section 1. *Basic Rental.* From and after the commencement of this Lease, Lessee shall pay to Lessor an aggregate annual basic rental * * * of the sum of

(a) [$30,000] payable in equal monthly installments commencing on February 1, 1976 and on the first day of each and every month thereafter, * * * and

(b) the annual payments of or provision for principal and interest due under:

(1) promissory notes of Lessor * * * in the amount of $825,000, and * * * $175,000, both secured by Deed of Trust to Davenport Bank and Trust Company * * * ."

Kaufman agreed to the following provisions in a guaranty dated December 29, 1975:

"In consideration of the making of the foregoing Lease by and between [Blackhawk] ('Lessor') and [Knightsbridge] ('Lessee'),

the undersigned Gerald S. Kaufman, an individual resident in the State of Illinois, at the request of the Lessor, and in reliance of the Lessor on this Guaranty, hereby unconditionally guarantees payment of the Basic Rental described in Section 1 of Article IV of said Lease to the Lessor. Any assignment or assignments and successive assignments of the Lease, or *any sale* of the premises which are the subject of the Lease, * * * shall release the undersigned from liability as guarantor." (Emphasis added.)

During early 1976, Knightsbridge failed to continue making its rent payments as required by the lease. Blackhawk, in turn, defaulted on mortgage payments due its mortgagee, and that bank initiated mortgage foreclosure proceedings on or about June 22, 1976. In a letter dated June 26, 1976, Blackhawk's general partner allegedly made demand upon Kaufman to perform his obligations under the guaranty. Kaufman made no payments. On August 27, 1976, the District Court of Scott County, Iowa, entered judgment for the bank and against Blackhawk in the amount of $993,093.05 plus interest and costs. That court ordered, by special execution, the Scott County sheriff to sell the hotel and all personalty associated with it in satisfaction of the judgment. On October 5, 1976, at a public judicial sale, the bank made the highest bid and, accordingly, the sheriff executed to the bank a certificate of purchase for the property. Blackhawk suffered no deficiency liability as a result of the mortgage foreclosure proceedings.

## I.

### A.

■■ Blackhawk contends on appeal that it was error for the trial court to enter judgment for Kaufman because the parties disputed the effective meaning of the term "sale." Blackhawk characterizes this dispute as raising a material issue of fact precluding entry of summary judgment. In *Presto Manufacturing Co. v. Formetal Engineering Co.* (1977), 46 Ill. App. 3d 7, 10, 360 N.E.2d 510, this court restated the well-established principles governing summary judgments as follows:

"A motion for summary judgment is proper where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, show that there is no genuine issue as to any material fact. [Citations.] Yet the reviewing court will reverse an order granting summary judgment if it determines that a material question of fact does exist [citation] because summary judgment is inappropriate under such circumstances [citation]. The right of the moving party must be clear and free from doubt. [Citations.] In making its determination, a court must construe the pleadings strictly against

the moving party and liberally in favor of the opponent [citations]; and if the facts admit of more than one conclusion or inference, including one unfavorable to the moving party, the motion for summary judgment should be denied [citation]."

Applying these principles to the facts here, we believe the trial court properly granted summary judgment for Kaufman.

### B.

■■ ■ It is clear, as a matter of law, that the terms "any sale" must be construed as including the event of a judicial sale. This conclusion is demanded by an application of the general principles governing contracts of guaranty. The "primary object of the construction of a contract is to give legal effect to the intention of the parties." (*Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 228-29, 359 N.E.2d 745, citing *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683.) To determine intent, a basic rule of construction requires that a court simply look to the contract as ultimately executed. "In considering the guaranty agreement the rule is that it must be strictly construed and the liability of a guarantor cannot be extended by construction." (*King Korn Stamp Co. v. Guaranty Bank & Trust Co.* (1969), 114 Ill. App. 2d 428, 438, 252 N.E.2d 734.) Further, "[w]here a contract of guaranty is unequivocal in its terms it must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly imports. It is not what one of the parties may have intended, but what is shown by the contract to have been the intention of both parties." (*National Acceptance Co. of America v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 402, 243 N.E.2d 264; see also *Jacobson v. Devon Bank* (1976), 39 Ill. App. 3d 1053, 1055-56, 351 N.E.2d 254.) Thus, in the absence of an ambiguity, the plain language of the contract controls and no extrinsic evidence need be adduced. *King Korn Stamp Co. v. Guaranty Bank & Trust Co.*

■■ The terms in this contract are not ambiguous. A "sale" of realty is ordinarily defined as "[a] contract between two parties, * * * by which the [seller], in consideration of the payment * * * of a certain price in money, transfers to the [buyer] the title and possession of the property." (Black's Law Dictionary 1503 (4th ed. 1957) accord, Webster's Third New International Dictionary 2003 (1961).) Illinois courts have defined a "sale" of land as the actual transfer of title from grantor to grantee by an appropriate instrument of conveyance for money (*Keogh v. Peck* (1925), 316 Ill. 318, 328, 147 N.E. 266; *Close v. Browne* (1907), 230 Ill. 228, 236, 82 N.E. 629), "but the term is broad enough to include the transfer of property for any sort of valuable consideration including the extinguishment of debts [citations]. Moreover, a 'sale' may be effected

even though the grantee is the holder of a note secured by a mortgage [on the transferred property] * * * ." (*Felbinger & Co. v. Traiforos* (1979), 76 Ill. App. 3d 725, 732; see generally *Commissioner v. Abramson* (2d Cir. 1942), 124 F.2d 416, 417; *Lincoln National Bank v. Lampe* (N.D. Ill. 1976), 414 F. Supp. 1270, 1278.) It is undisputed by the parties that Blackhawk's interest in the hotel was legally transferred to extinguish its judgment debt. The bank, although a holder of a mortgage note on the property, became the grantee of the hotel. Thus, the court ordered transaction following Blackhawk's default could fall within the meaning of the term "sale" as used by the parties to the guaranty.

Blackhawk asserts that the record indicates this construction of "sale" was not contemplated by the parties at the time of agreement. Blackhawk supports this allegation with an affidavit from the attorney who drafted the guaranty for the parties. The affidavit states that the parties did not discuss the effect a foreclosure sale by court order might have upon the obligations of the guarantor. Blackhawk contends that this fact, when conjoined with the existence of multiple meanings for the term "sale," required the trial court to apply the latent ambiguity doctrine and recognize a material question of fact. See generally *General Casualty Co. v. Elam* (1972), 8 Ill. App. 3d 215, 220-21, 289 N.E.2d 699; *Cory v. Minton* (1977), 49 Ill. App. 3d 312, 316, 364 N.E.2d 311.

■ This guaranty, however, also contains the function word "any." The word "any" is defined as being one indiscriminately of whatever kind (*Mathis v. Hejna* (1969), 109 Ill. App. 2d 356, 361, 248 N.E.2d 767) in a category containing two or more, and is "equivalent to and has the force of 'every' or 'all'. [Citations.]" (*Roedler v. Vandalia Bus Lines, Inc.* (1935), 281 Ill. App. 520, 523.) Consequently, the phrase "any sale" is equivalent in meaning to "every sale."

■ Under the facts presented, the foreclosure sale released Kaufman. A foreclosure sale transaction is, as a matter of law, within the scope of the term "sale." (*Felbinger & Co. v. Traiforos.*) The parties to the guaranty here included that particular transaction within their provision for Kaufman's release by writing the word "any" into the phrase at issue. (*Mathis v. Hejna; Roedler v. Vandalia Bus Lines, Inc.*) As the contract is written, no ambiguity exists. Every event which constituted a "sale" would operate to release Kaufman from his obligations under the contract. Therefore, summary judgment was properly granted because no other conclusion can be reached.

■ It should be noted, as this court has stated before, "[t]he sympathy one might entertain for the mortgagor should be tempered by remembering that the contracting parties enjoy the freedom to employ in the marketplace whatever they may possess of wisdom or folly [citation] and that a court is without power to alter the clear terms of a * * *

contract. [Citation.]" *National Acceptance Co. of America v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 405, 243 N.E.2d 264.

For the aforesaid reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.