FOXFIELD REALTY, INC., Plaintiff-Appellant, v. THEODORE KUBALA *et al.*, Defendants-Appellees.

Second District    No. 2—96—0836

Opinion filed April 9, 1997.

Stephen Sullivan, of Batavia, for appellant.

Walter H. Hamilton, Jr., of Geneva, for appellees.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Foxfield Realty, Inc., a real estate broker, appeals from the circuit court's order of May 6, 1996, dismissing with prejudice (see 735 ILCS 5/2—615 (West 1994)) the plaintiff's unverified complaint seeking the award of a real estate sales commission allegedly owed by the defendants, Theodore and Barbara E. Kubala, pursuant to an exclusive right-to-sell agreement. Following the denial of its motion to reconsider, the plaintiff timely appeals. We affirm.

The plaintiff contends that the court's dismissal of the cause of action and the denial of the motion to reconsider were erroneous where the plaintiff's exclusive right-to-sell agreement with the defendants (sellers) provided that the seller agreed to pay the listing broker a commission of 6% of the full selling price, including encumbrances, "if any sale or exchange is made by [the] BROKER, by the SELLER or by anyone else" during the exclusive listing period.

Initially, we note that there is no report of proceedings for the hearing at which the order of dismissal was entered, but there is one for the hearing on the motion to reconsider. The complaint alleged that the defendants were the owners of real property located in St. Charles, Illinois. On July 14, 1994, the plaintiff and the defendants entered into a written listing agreement. The defendants signed the agreement as "SELLER." The defendants appointed the plaintiff as their agent with the exclusive right to sell the property at the list price of $237,500 or such lesser amount as the sellers agreed to accept. The agreement was made in consideration for, among other things, the plaintiff's efforts to procure a purchaser for the property.

Under the agreement, the sellers had the usual obligations to provide a current survey and a title policy as evidence of merchantable title and to refer all inquiries made to the seller to the listing broker. The commission was due for covered transactions during the exclusive period or if it were sold or exchanged within 60 days after the termination of the agreement (unless the property were listed with another broker) to any "PURCHASER" to whom it was offered or shown during the term of the agreement. The exclusive period was from August 5, 1994, through February 5, 1995.

The complaint alleged that the plaintiff advertised the property and showed it to prospective purchasers. It stated that the plaintiff learned that Barbara conveyed her interest in the property to Theodore by (quitclaim) deed, dated December 20, 1994, in exchange for consideration in the form of property and an allocation of debt as the result of a marital settlement agreement and pursuant to a judgment

of dissolution of the defendants' marriage. The plaintiff therefore concluded that the defendants became obligated to pay a 6% commission on the $237,500 list price.

Theodore moved to dismiss the complaint for the failure to state a cause of action. The motion stated that Theodore and Barbara owned the property as joint tenants at the time of the agreement and that on December 6, 1994, the court entered an agreed order dividing the property in accordance with a prior order presumably entered in the dissolution proceeding. The December 6 order appears to be in response to Theodore's motion to compel the enforcement of a prior judgment and orders, *inter alia*, Theodore to pay Barbara $103,000 in satisfaction of certain credit card debts, the purchase of three life insurance policies, Barbara's interest in the marital property, and an award of $33,265 due according to the prior judgment.

Appended to Theodore's motion was a copy of a quitclaim deed dated December 20, 1994, and signed by Barbara; also appended were copies of two checks dated December 19, 1994, totalling $103,000 and a receipt signed by Barbara. Theodore asserted that the transaction was a division of marital assets pursuant to a court order and not a "sale." Citing a Colorado case, *Cooley Investment Co. v. Jones*, 780 P.2d 29 (Colo. App. 1989), because of the lack of Illinois precedent, Theodore also argued that there was merely a change in the form of ownership and not a transfer to another entity; thus, there was no sale and no right of the plaintiff to a commission. Barbara filed a separate motion to dismiss also arguing that there was no sale entitling the plaintiff to a commission.

■ An appeal from the dismissal of a complaint for the failure to state a cause of action preserves for review only the question of the legal sufficiency of the complaint. *Payne v. Mill Race Inn*, 152 Ill. App. 3d 269, 273 (1987). In considering a motion to dismiss, all well-pleaded facts are taken as true along with all reasonable inferences favorable to the nonmoving party. *Payne*, 152 Ill. App. 3d at 273. However, a motion to dismiss does not admit conclusions of law or of fact that are not supported by allegations of specific facts which form the basis for such conclusions. *Payne*, 152 Ill. App. 3d at 273. Exhibits attached to the pleadings are considered part of the pleadings, and allegations in the pleadings that conflict with facts disclosed in the exhibits are not admitted as true; rather, the exhibits control. *Evers v. Edward Hospital Ass'n*, 247 Ill. App. 3d 717, 724 (1993). The granting of a motion to dismiss a complaint is within the discretion of the trial court. *Evers*, 247 Ill. App. 3d at 724.

■ A claim should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings

which will entitle a party to recover. *F.H. Prince & Co. v. Towers Financial Corp.*, 275 Ill. App. 3d 792, 797 (1995). Whether a complaint states a cause of action based on the interpretation of a contract may be the subject of a motion to dismiss where the question presented is a matter of law. See, *e.g., Evers*, 247 Ill. App. 3d 717; *Chicago Investment Corp. v. Dolins*, 93 Ill. App. 3d 971, 974 (1981); see also *Camp v. Hollis*, 332 Ill. App. 60 (1947).

The trial judge, who was the same in both the dissolution proceeding and the contract action, was in a position to take judicial notice of the facts in the dissolution proceeding. We do not have the benefit of a complete record from either proceeding. At the hearing on the motion to reconsider, the trial judge noted that both owners of the property signed the listing agreement. He concluded that a cause of action was not properly pleaded as no commission was triggered under the agreement where one signatory merely transferred her interest to the other. We agree with this result.

The question presented is whether the trial court properly construed the exclusive sales agreement to mean that Barbara's quitclaim of her interest in the property, pursuant to a judgment in the marriage dissolution proceeding which ordered a division of the defendants' assets, did not obligate the defendants to pay a commission to the plaintiff. The facts are essentially undisputed. Since the real dispute centers on the interpretation of the contract, the legal effect and interpretation of the contract are questions of law. See *Kennedy, Ryan, Monigal & Associates, Inc. v. Watkins*, 242 Ill. App. 3d 289, 295 (1993).

■ In an exclusive sales agreement (as opposed to an exclusive agency agreement), the broker may become entitled to a commission if the property is sold by anyone during the life of the agreement. *Kennedy*, 242 Ill. App. 3d at 294. However, in determining whether there was a sale that triggered a commission, the court must ascertain the intent of the parties as evidenced in the contract as a whole, and not merely by reference to particular words or isolated phrases. *Kennedy*, 242 Ill. App. 3d at 295. In determining the parties' intent, the court simply looks to the contract as ultimately executed; when the contract terms are clear and unambiguous, they must be given their ordinary and natural meaning and no parol evidence may be considered to vary the meaning of the terms; whether an ambiguity exists is itself a question of law for the court. *Hammel v. Ruby*, 139 Ill. App. 3d 241, 247 (1985).

■ Although the term "sale" has no fixed or invariable meaning, it is to be interpreted in accordance with the manifest intention of the parties. *Felbinger & Co. v. Traiforos*, 76 Ill. App. 3d 725, 732

(1979). We find that the language of the contract is not ambiguous and must be given its ordinary and natural meaning within the context of the contract. See *Hammel*, 139 Ill. App. 3d at 247. The plaintiff maintained in the trial court that the contract is unambiguous, but nevertheless urges that its construction of the term "sale" controls. It is not what one of the parties may have intended that controls, but what is shown by the contract to have been the intention of both parties. *Blackhawk Hotel Associates v. Kaufman*, 80 Ill. App. 3d 462, 465 (1979). The language of a contract is not ambiguous simply because the parties disagree upon its meaning (*Omnitrus Merging Corp. v. Illinois Tool Works*, 256 Ill. App. 3d 31, 37 (1993)), nor is it ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends (*Shultz v. Delta-Rail Corp.*, 156 Ill. App. 3d 1, 10 (1987)).

■ Finally, to the extent that a contract is susceptible of two interpretations, one of which makes it fair, customary, and such as prudent persons would naturally execute, while the other makes it inequitable, unusual, or such as reasonable persons would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. *Kokinis v. Kotrich*, 74 Ill. App. 3d 224, 229 (1979); *Camp*, 332 Ill. App. at 68. Courts will construe a contract reasonably to avoid absurd results. *Wachta v. First Federal Savings & Loan Ass'n*, 103 Ill. App. 3d 174, 181 (1981).

■ A sale is defined as a "contract between two parties, called respectively, the 'seller' (or vendor) and the 'buyer' (or purchaser), by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the latter the title and the possession of [the] property." Black's Law Dictionary 1337 (6th ed. 1990) (hereinafter Black's). It is also defined as a "contract whereby property is transferred from one person to another for a consideration of value, implying the passing of the general and absolute title, as distinguished from a special interest falling short of complete ownership." Black's at 1337. A further definition states in part that, to constitute a sale, "there must be parties standing to each other in the relation of buyer and seller." Black's at 1337. Illinois courts have recognized various transactions as constituting sales—including the transfer of property for any kind of valuable consideration such as the extinguishment of a debt or a transfer where the grantee is the holder of a note secured by a mortgage even where effectuated by a court order or by a foreclosure sale. See *Blackhawk*, 80 Ill. App. 3d 462.

The fact that many types of property transfers for consideration

may come within the meaning of the term "sale" does not resolve whether the transaction here was one reasonably contemplated by the parties. For that, we rely on the cardinal rule of contract construction and examine the entirety of the contract language to ascertain the intention of the parties. Notwithstanding any technical definition of the term "sale" that the plaintiff urges us to accept, it is clear to us that the plaintiff's construction of the contract would produce an unusual, unintended, unreasonable, absurd, and inequitable result. This we cannot abide.

First, it is clear that an important consideration stated in the contract was the plaintiff's efforts to procure a qualified purchaser for the entire property, and not just a part interest in it. The limited record suggests that, in the dissolution proceeding, the court ordered the couple to place their property up for sale in order to divide their assets, and, in order to actually facilitate the sale, the court appears to have ordered the change in ownership. The trial court was in a better position to take notice of the facts in the dissolution proceeding and matters presented at the original hearing on the motion to dismiss. We are, however, limited to considering the record before us.

There is no doubt that a broker's commission would have become due if the *entire* property had been sold to a third-party buyer, regardless of whose efforts brought about the sale. One of the obvious purposes of an exclusive right-to-sell agreement is to prevent the seller from showing or offering the property to others without informing the broker so as to avoid paying a commission. Theodore and Barbara, who were joint tenants, obviously signed the listing agreement jointly as "SELLER" with the intent of disposing of the whole property to a third-party "PURCHASER" and not with the intent of transferring only a part interest in the property pursuant to a judicially ordered division of assets. Their duties and obligations, for example, in showing the property or providing evidence of merchantable title, are clearly aimed at producing a sale to other prospective purchasers.

It is inconceivable that the joint sellers here reasonably contemplated that they would be liable for a large commission for any partial transfer of one seller's interest, possession, and title to the other seller or upon any change between themselves in the ownership of the property. No reasonable person would enter into a sales contract in which he subjected himself to an unnecessary and unearned commission for the sale of property to himself or to his spouse under the circumstances presented. There is nothing whatsoever in the agreement to suggest even remotely that the broker was hired to facilitate the division or partition of their joint tenancy.

Though not precisely on point, *Cooley Investment*, 780 P.2d 29, adds some support to our conclusion. In *Cooley*, where the seller retained an ownership interest in the property and transferred her property to a partnership in which she had an interest, there was merely a change in the form of ownership and not a complete "sale" to another entity warranting a commission under an exclusive right-to-sell contract. Here, the plaintiff has cited Illinois cases where a sale was found to be within one of the usual meanings of the term where it occurred between the owner and a third-party entity such as a mortgagee or guarantor. See *Hammel*, 139 Ill. App. 3d 241; *Blackhawk*, 80 Ill. App. 3d 462; *Felbinger*, 76 Ill. App. 3d 725. The plaintiff has cited no authority having the facts present here.

■ The trial court properly construed the contract so as not to trigger a commission to the plaintiff. The plaintiff's interpretation of the contract is so unusual that it would have unintended, illogical, absurd, and inequitable results. If the plaintiff intended for these unusual circumstances to obligate the seller to pay a commission, it could easily have included such an express provision in the agreement. See *Ebrahim v. Checker Taxi Co.*, 128 Ill. App. 3d 906, 908 (1984). We doubt that any rational seller would have agreed to such a provision.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

DOYLE and RATHJE, JJ., concur.