**MITCHELL AIRCRAFT SPARES, INC., Plaintiff,**

v.

**EUROPEAN AIRCRAFT SERVICE AB, Defendant.**

No. 97 C 5668.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 28, 1998.

---

**916**

Ashish Shanker Prasad, Mayer, Brown & Platt, Chicago, IL, Kathleen Suzanne Donius, Christopher P. Banaszak, Reinhart, Boerner, Vandeuren, Norris & Rieselbach S.C., Milwaukee, WI, for Plaintiff.

Martin K. Denis, Robert Dennis Claessens, Douglas M. Werman, Kathryn I. Connors, Barlow, Kobata & Denis, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are the parties' cross-motions for summary judgment. For the following reasons, the court denies both motions.

### I. BACKGROUND [1]

Plaintiff Mitchell Aircraft Spares, Inc. ("Mitchell") has filed suit against defendant European Aircraft Service AB ("EAS") in this court, asserting claims for breach of contract and breach of warranty. Mitchell is an Illinois corporation with its principal place of business in Illinois. Mitchell acts as a speculator and broker in the market for surplus commercial aircraft parts. Greg Fletcher ("Fletcher") is a vice president and part owner of Mitchell.

EAS is a Swedish corporation with its principal place of business in Sweden. EAS buys parts from companies in Western Europe and the United States and sells these parts to airlines, overhaul shops, brokers, and companies like itself. Leif Headberg ("Hedberg") is a vice president and part owner of EAS. Hedberg's main responsibilities at EAS are purchasing and sales.

The dispute between these parties arises from an agreement between the parties that EAS would sell certain aircraft parts, specifically integrated drive generators ("IDGs"), to Mitchell. An IDG is an aircraft part used on L–1011 aircraft and is composed of two parts: a constant speed drive or transmission and a generator. In June of 1996, EAS had three IDGs available for purchase. EAS listed these IDGs on the Inventory Locator Database ("ILD"), which is an international database that contains listings of surplus air-

---

**1.** Unless otherwise indicated, the following facts are undisputed facts taken from the parties' Rule 12(M) and Rule 12(N) statements.

craft parts available for purchase. The parties dispute exactly how EAS listed these parts: Mitchell claims that EAS listed the parts as three number 729640 IDGs; EAS claims that it listed the parts with two or three alternative part numbers, one of which was 729640. (Def.'s Rule 12(N)(3)(b) Statement ¶ 14; Pl.'s Resp. to Def.'s Rule 12(N)(3)(b) Statement (hereinafter "Pl.'s Resp.") ¶ 14.)

On or about June 30, 1996, Fletcher contacted Hedberg about the three IDGs that EAS had listed on the ILD. One of Fletcher's sub-specialties within the Mitchell organization is buying and selling L–1011 IDGs. Fletcher, who considers himself to be an expert with respect to the buying and selling of IDGs, told Hedberg that he had experience in dealing with IDGs. Fletcher asked Hedberg about the availability, the condition, and the price of the three IDGs and about how soon EAS could ship the parts. Hedberg told Fletcher that EAS had three IDGs for the L–1011 available and that they were in "as removed" condition. At his deposition, Fletcher testified that he also asked Hedberg if EAS had any IDGs part number 729640 and Hedberg responded "Yes." (Pl.'s Resp. ¶ 14.) At Hedberg's deposition, Hedberg testified that he and Fletcher did not discuss the part number of the IDGs in that first conversation. (Hedberg Dep. at 59.)

Fletcher and Hedberg then began negotiations over the IDGs. Hedberg testified that he told Fletcher that EAS could not determine the exact part number of the IDGs available for sale. (Def.'s Rule 12(N)(3)(b) Statement ¶ 20.) Fletcher then requested information about the IDGs "to try to confirm the part number of the units that [EAS] wished to sell and that [Mitchell] wished to buy." (Id. ¶ 21.) In response, Hedberg sent Fletcher a fax dated July 3, 1996. In the fax, Hedberg listed the information off of the data plates on the three IDGs. The information was given to Hedberg by Mr. Goran at Mondair. The July 3 fax did not expressly state that the IDGs were part number 729640; rather, the fax gave the part numbers for the generators and transmissions that went together to form the IDG. Hedberg testified that he "made it clear" to Fletcher that he did not have the information necessary to determine whether the part

number of the IDGs was 729640. (Id. ¶ 23.) Fletcher testified that he could not remember if Hedberg told him that EAS could not determine the part number of the IDGs. (Pl.'s Resp. ¶ 20.) Hedberg testified that he sent Fletcher the July 3 fax "so that [Mitchell] might make a determination" of the part number of the IDGs and that Fletcher told him that he was going to contact Sundstrand Aerospace, the original manufacturer of the IDGs. (Def.'s Rule 12(N)(3)(b) Statement ¶¶ 22–23.) Fletcher testified that he did not tell Hedberg that he was going to call Sundstrand concerning the information contained in the July 3 fax. (Pl.'s Resp. ¶ 23.) Fletcher further testified that both EAS and Mitchell knew that Mitchell was only interested in purchasing IDGs with part number 729640 at the time that the July 3 fax was sent. (Pl.'s Resp. ¶ 22 .)

Fletcher did not contact Sundstrand immediately. Rather, Fletcher determined from the information contained in the July 3 fax that the parts available for sale were part number 729640. Fletcher then called Hedberg and said: "It appears that all three IDGs are what we want, part number 729640. Let's negotiate a price." (Fletcher Dep. at 38.) Hedberg testified that he relied on the information Fletcher told him regarding the IDGs because Fletcher "had been dealing with IDGs for years and is very knowledgeable about them" and because Fletcher "had been talking with Sundstrand about the IDGs." (Pl.'s Resp. ¶ 16.) Fletcher and Hedberg agreed upon a price of $50,000 per IDG.

Mitchell then issued a purchase order for the IDGs. The purchase order describes the IDGs as part number 729640. The purchase order also states that the "UNITS ARE TO BE AS DESCRIBED IN TELEFAX OF JUL 3, 1996 FROM LEIF TO GREG: UNIT # 1: CSD SN 5201 / GEN SN 2370; UNIT # 2: CSD SN 1692 / GEN SN 180; UNIT # 3; CSD SN 233 / GEN SN 432C ." EAS then prepared an invoice which describes the parts as "729640 IDG." The invoice also references Mitchell's purchase order. EAS also provided Mitchell with a "Material Certification Form," which describes the parts as 729640 IDGs and references Mitchell's purchase order.

EAS then shipped the IDGs to Mitchell. Mitchell then forwarded the IDGs to Sundstrand for overhaul. After working on the parts, Sundstrand informed Mitchell that all three of the IDGs were part number 708524 and not part number 729640. At Hedberg's request, Mitchell sent the IDGs with serial numbers 233 and 1692 to Nortek in Miami Florida. Nortek confirmed that those IDGs were part number 708524. Mitchell claims that it has suffered damages in the amount of $120,000 as a result of having received IDGs that were part number 708524 instead of part number 729640.

Unable to resolve the dispute, Mitchell filed suit in this court for breach of contract and breach of warranty. Only July 21, 1998, Mitchell filed a motion for summary judgment. On August 4, 1998, EAS filed a motion for a determination of the applicable law. Mitchell did not oppose EAS's motion. On August 13, 1998, the court issued an order, ruling that the applicable law is the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), 15 U.S.C. app. (West 1998). Mitchell then filed its amended motion for summary judgment, which was fully briefed on September 18, 1998. EAS filed its motion for summary judgment on September 22, 1998, which was fully briefed on October 21, 1998.

## II. DISCUSSION

### A. Choice-of-law issues and the court's subject matter jurisdiction

Before addressing the merits of the parties' motions, the court must address the issues raised with regard to choice-of-law and subject matter jurisdiction. After an initial review of this case, the court determined that it had diversity jurisdiction because the case is between a citizen of Illinois and a citizen of Sweden and the amount in controversy exceeds $75,000. 28 U.S.C. 1332(a)(2). Because it was a diversity case, EAS moved the court to determine whether the substantive law of Sweden, Illinois, or the CISG governed this contract dispute. EAS argued that the CISG governed. Mitchell did not oppose the motion and did not argue that the

CISG did not govern. Thus, the court determined that the CISG governed.

The parties then submitted their motions for summary judgment, in which each party raised an issue not raised in the parties' briefs regarding the choice-of-law determination. EAS argued for the first time that the court's subject matter jurisdiction is actually not based on diversity but is based on a federal question because the case arises under the CISG, a convention of the United States. See 28 U.S.C. § 1331. Mitchell argued for the first time that issues of contract formation are governed by Illinois law because Sweden opted out of Part II of the CISG, which is the part that governs contract formation.

■ First the court will address its basis for subject matter jurisdiction. As previously explained, it is clear that this court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. Thus, this court has jurisdiction over the case regardless of whether the CISG provides an independent basis for subject matter jurisdiction. The court's opinion would not change in any way if it found that its jurisdiction were based on the CISG. Thus, the court need not reach the issue of whether the CISG provides an independent basis for subject matter jurisdiction.

■ Next the court addresses the choice-of-law issues presented in this case. As previously discussed, the CISG governs most of the issues in this case because the United States, where Mitchell has its place of business, and Sweden, where EAS has its place of business, are both States Party to the CISG. CISG art. I. As the parties agree, the CISG does not govern issues which are addressed in Part II (Formation of the Contract) of the CISG because Sweden declared in its instrument of ratification that it would not be bound by Part II. CISG Parties to the Convention n. 16. Rather, as the parties also agreed, Illinois law governs the contract formation issues in this case.[2]

2. In the event that this court's subject matter jurisdiction is based on a federal question and not diversity, it is not clear that Illinois law would be the governing law. However, as the outcome of this opinion does not depend on whether Illinois law applies, the court need not address this issue.

**B. Standard for deciding a motion for summary judgment**

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995).

The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party presents a *prima facie* showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989).

**C. Mitchell's breach-of-contract claim**

Both parties argue that they are entitled to summary judgment on Mitchell's breach-of-contract claim. Mitchell argues that the parties contracted for EAS to sell Mitchell three IDGs part number 729640 and that EAS breached the contract when it sold Mitchell IDGs which were not part number 729640. EAS argues that the parties contracted for EAS to sell Mitchell the three IDGs that EAS had available for sale and not for EAS to sell IDGs part number 729640. EAS further argues that Mitchell assumed the risk that the IDGs would not be part number 729640 and that Mitchell's decision to purchase the IDGs was the direct result of Mitchell's unilateral mistake in interpreting the information that EAS provided.

Under the CISG, "[t]he seller must deliver goods which are of the quantity, quality and description required by the contract." CISG art. 35. The seller is liable in accordance with the contract and this Convention for any lack of conformity. CISG art. 36. Therefore, the issue is what specific goods the parties contracted for EAS to sell Mitchell.

**1. Parol evidence and the CISG**

Before analyzing the evidence submitted by the parties, the court must determine whether it can consider parol evidence in deciding the parties' dispute. Mitchell argues that the court cannot because the contract, *i.e.*, the purchase order, is clear and unambiguous. EAS argues that the court can because the contract is patently ambiguous. Neither Mitchell nor EAS addressed whether parol evidence is admissible under the relevant provisions of the CISG.

This court was unable to find any case from the Seventh Circuit or a district court in the Seventh Circuit which has addressed the issue of whether a court can consider parol evidence in a contract dispute governed by the CISG. This is not surprising because "there is virtually no case law under the Convention." *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1028 (2d Cir.1995). Thus, the issue of whether the court can consider parol evidence in a contract dispute governed by the CISG is an issue of first impression for this court.

The Eleventh Circuit addressed this issue in its highly persuasive opinion in the case of *MCC–Marble Ceramic Center, Inc. v. Ceramica Nuova d'Agostino*, 144 F.3d 1384, 1389–90 (11th Cir.1998). Because this court agrees with the holding and reasoning of *MCC–Marble* on this issue, the court will provide a detailed account of the *MCC–Marble* opinion.

In *MCC–Marble*, the plaintiff was suing the defendant for breach of contract. *Id.* at 1385. The CISG governed the breach-of-contract dispute. *Id.* at 1385. In addition to other defenses, the defendant relied on certain provisions contained in the pre-printed contract, which the defendant had prepared and the plaintiff had executed. *Id.* The

plaintiff argued that the parties never intended for the provisions to apply to their agreements. *Id.* at 1386. In support of its argument, the plaintiff submitted an affidavit from the individual who signed the forms on the plaintiff's behalf. *Id.* The affiant stated that the plaintiff had no intent to be bound by the terms of the pre-printed forms and that the defendant was aware of that intent. *Id.* Applying the parol evidence rule and thus ignoring the evidence contained in the plaintiff's agent's affidavit, the district court granted summary judgment in favor of the defendant. *Id.* 1387.

The Eleventh Circuit reversed the district court. *Id.* at 1393. Addressing the parol evidence issue, the court first analyzed article 8 of the CISG. Article 8(1) provides: "For the purposes of this Convention statements made by and other conduct of a party are to be interpreted according to his intent where the other party knew or could not have been unaware what that intent was." The court read article 8(1) as requiring the court "to consider evidence of a party's subjective intent when signing a contract if the other party to the contract was aware of that intent at the time." *Id.* at 1388. The court also noted that article 8(3) "expressly directs courts to give 'due consideration ... to all relevant circumstances of the case including the negotiations ...' to determine the intent of the parties." *Id.* at 1389.

Having determined that much, the court then was forced to address the issue of "whether the parol evidence rule, which bars evidence of an earlier oral contract that contradicts or varies the terms of a subsequent or contemporaneous written contract, plays any role in cases involving the CISG." *Id.* Observing that the CISG contains no express statement on the role of parol evidence, the court stated: "It is clear, however, that the drafters of the CISG were comfortable with the concept of permitting parties to rely on oral contracts because they eschewed any statutes of fraud provision and expressly provided for the enforcement of oral contracts." *Id.* (citing article 11 of the CISG). The court

then concluded: "Given article 8(1)'s directive to use the intent of the parties to interpret their statements and conduct, article 8(3) is a clear instruction to admit and consider parol evidence regarding the negotiations to the extent they reveal the parties' subjective intent." *Id.* The court thus held that CISG rejects the parol evidence rule and clearly instructs the court to admit and consider probative parol evidence regarding the parties' negotiations inasmuch as that evidence reveals the subjective intent of the parties. *Id.*

This court agrees with the Eleventh Circuit that article 8 of the CISG requires the court to consider parol evidence inasmuch as that evidence is probative of the subjective intent of the parties. This conclusion is in accord with the great weight of persuasive authority on the issue. *See MCC–Marble,* 144 F.3d at 1390 & n. 17 (citations omitted); *Claudia v. Olivieri Footwear Ltd.,* No. 96 Civ. 8052, 1998 WL 164824, at *5–6 (S.D.N.Y. Apr.1, 1998) (stating that "contracts governed by the CISG are freed from the limits of the parol evidence rule and there is a wider spectrum of admissible evidence to consider in construing the terms of the parties' agreement"); *see also Filanto v. Chilewich Int'l Corp.,* 789 F.Supp. 1229, 1238, n. 7 (S.D.N.Y.1992).[3] Accordingly, the court finds that it must consider any evidence concerning any negotiations, agreements, or statements made prior to the issuance of the purchase order in this case in determining whether the parties contracted for EAS to sell Mitchell three IDGs part number 729640 or, alternatively, to sell Mitchell the three IDGs that EAS had available for purchase.

■ One might argue that Illinois law, not the CISG, governs the parol evidence issue in this case because the parol evidence rule is a rule of contract formation and, as discussed above, Illinois law governs contract formation issues in this case. *Mohr v. Metro East Mfg. Co.,* 711 F.2d 69, 71 (7th Cir.1983). However, the issue of parol evidence is addressed in

---

3. In *Beijing Metals & Minerals Import/Export Corp. v. American Bus. Ctr.,* 993 F.2d 1178 (5th Cir.1993), the Fifth Circuit reached an opposite conclusion. However, the court did not conduct any analysis of the CISG to support its conclusion. Thus, the court finds that the *Beijing Metals* opinion is not persuasive on this issue. *See MCC–Marble,* 144 F.3d at 1389–90 (stating that the *Beijing Metals* opinion was "not particularly persuasive").

article 8 of the CISG, which is in Part I of the CISG. CISG art. 8. Neither Sweden nor the United States declared that it would not be bound by Part I of the CISG. *See* CISG Parties to the Convention nn. 16 & 19. Thus, the court finds that the CISG, not Illinois law, governs the parol evidence issue in this contract dispute.

 Assuming that Illinois law would govern the parol evidence issue, however, parol evidence would still be admissible in this case. In Illinois, parol evidence is admissible when the contract is ambiguous. *Foxfield Realty Inc. v. Kubala*, 287 Ill.App.3d 519, 223 Ill.Dec. 52, 678 N.E.2d 1060, 1063 (Ill.App.Ct. 1997). Whether an ambiguity exists is a question of law for the court to decide. *Id.* (citing *Hammel v. Ruby*, 139 Ill.App.3d 241, 93 Ill.Dec. 742, 487 N.E.2d 409 (1985)).

In this case, the purchase order is ambiguous. Although the purchase order describes the goods as IDGs part number 729640, it also states that the "UNITS ARE TO BE AS DESCRIBED IN TELEFAX OF JUL 3." The July 3 fax never describes the IDGs as part number 729640; rather, the fax gives the part numbers for the generators and transmissions. EAS has submitted evidence that the part numbers given for the transmissions and the generators could never go together to form an IDG part number 729640. Therefore, the contract is ambiguous as to whether the parties contracted for EAS to sell Mitchell IDG's part number 729640 or the three IDGs with the generator and transmission parts described in the July 3 fax, which were not IDG's part number 729640. Because the contract contains such an ambiguity, Illinois law allows the court to consider parol evidence in interpreting the contract.

**2. The evidence in this case**

 Having determined that the CISG requires the court to consider the contract along with any evidence concerning any negotiations, agreements, or statements made prior to the issuance of the purchase order in this case, the court must now determine whether there is a genuine issue of fact as to whether the parties contracted for EAS to sell Mitchell three IDGs part number 729640 or, alternatively, to sell Mitchell the three

IDGs that EAS had available for purchase. The court finds that there is.

One the one hand there is evidence that the parties contracted for EAS to sell Mitchell IDGs part number 729640. First the purchase order, invoice, and material certification all state that EAS is selling Mitchell three IDGs part number 729640. Second, there is evidence that the information contained in the July 3 fax indicated that the part number of the IDGs was 729640. Finally, there is Fletcher's testimony that (1) the parts were listed on the ILD as three number 729640 IDGs; (2) at the time that the July 3 fax was sent, both EAS and Mitchell knew that Mitchell was only interested in purchasing IDGs with part number 729640; and (3) Fletcher asked Hedberg if EAS had any IDGs part number 729640 and Hedberg responded "Yes."

On the other hand, there is evidence that the parties contracted for EAS to sell the IDGs it had available for purchase, which were not part number 729640. First, the July 3 fax never identified the IDGs as part number 729640; rather, it simply listed the part numbers of the transmissions and the generators which went together to form the IDG. Second, the purchase order states that it is for the units described in the July 3 fax, which are the units EAS had available for purchase. Finally, there is Hedberg's testimony that (1) the parts were listed on the ILD with two or three alternative part numbers and not just part number 729640; (2) he and Fletcher did not discuss the part number of the IDGs in that first conversation; (3) he relied on Fletcher's expertise in IDGs in the negotiations; (4) he told Fletcher that EAS could not determine the exact part number of the IDGs available for sale and "made it clear" to Fletcher that he did not have the information necessary to determine whether the part number of the IDGs was 729640; (5) Fletcher requested information about the IDGs "to try to confirm the part number of the units that [EAS] wished to sell and that [Mitchell] wished to buy"; (6) Hedberg sent Fletcher the July 3 fax "so that [Mitchell] might make a determination" of the part number of the IDGs; and (7) Fletcher decided to buy the IDGs available after determin-

ing for himself that the IDGs were part number 729640.

Based on the above evidence, the court finds that there is a genuine issue of material fact which precludes summary judgment. There is evidence that the parties contracted for EAS to sell IDGs part number 729640. There is also evidence that the parties contracted for EAS to sell Mitchell the IDGs that EAS had available for purchase. Accordingly, neither party is entitled to summary judgment on this issue.

EAS also argues that it is entitled to summary judgment because Mitchell assumed the risk that the IDGs were not part number 729640 and made a unilateral mistake in determining that the IDGs were part number 729640. There is a genuine issue of fact, however, as to whether Mitchell assumed the risk and whether the mistake was unilateral or bilateral.

As a preliminary matter, the court notes that these issues are moot if the parties contracted for EAS to sell Mitchell the IDGs that EAS had available for purchase. If that is all that the parties agreed on, then the goods which EAS sent to Mitchell would not be nonconforming and EAS would not be liable for breach of contract. Thus, these issues as to the assumption of risk and mistake are only issues if the parties contracted for EAS to sell Mitchell IDGs part number 729640.

As to the assumption of risk issue, however, there is a genuine issue of fact as to whether Mitchell assumed the risk. On the one hand, EAS submitted evidence that (1) the parts were listed on the ILD as three number 729640 IDGs; (2) Fletcher asked Hedberg if EAS had any IDGs part number 729640 and Hedberg responded "Yes"; and (3) one could tell from an external examination whether the IDGs were part number 729640 or 708524. This evidence would tend to show that Mitchell did not assume the risk. On the other hand, there is evidence that (1) Hedberg relied on the information Fletcher's determination that the IDGs were part number 729640 and (2) Fletcher knew that Hedberg/EAS did not and could not determine the IDGs part number. This evidence tends to show that Mitchell did assume

the risk. Accordingly, neither party is entitled to summary judgment on this issue.

As to the mistake issue, there is also a genuine issue of fact as to whether the mistake was bilateral or unilateral. On the one hand, there is evidence that (1) Fletcher determined that the IDGs were part number 729640; (2) Fletcher knew that EAS could not determine what part number the IDGs were; and (3) the parties agreed that Fletcher would evaluate the information and then determine if he wanted the IDGs. This evidence would tend to show that the mistake was unilateral. On the other hand, there is evidence that (1) the parts were listed on the ILD as three number 729640 IDGs and (2) Fletcher asked Hedberg if EAS had any IDGs part number 729640 and Hedberg responded "Yes." This evidence would tend to show that the mistake was bilateral. Therefore, neither party is entitled to summary judgment on this issue.

### D. Mitchell's breach of warranty claim

Both parties also argue that they are entitled to summary judgment on Mitchell's breach of warranty claim. Their arguments mirror their arguments with respect to Mitchell's breach of contract claim. Mitchell argues that EAS breach its warranty to sell Mitchell IDG's part number 729640. EAS argues that there was no warranty to sell Mitchell IDGs part number 729640.

As with the breach of contract claim, the court finds that there is a genuine issue of fact as to whether EAS promised to sell Mitchell IDGs part number 729640. See supra Part II.A.2. Accordingly, neither party is entitled to summary judgment on Mitchell's breach of warranty claim.

### E. Mitchell's claim for damages

Both parties also move for summary judgment on the issue of damages. Mitchell argues that it is entitled to a judgment of $120,000. EAS argues that Mitchell is entitled to nothing.

The court need not reach the issue of damages at this stage of the litigation. As previously discussed, there is a genuine issue

of fact as to liability. Accordingly, the issue of damages is premature.

## III. *CONCLUSION*

In sum, there are several genuine issues of material fact which preclude summary judgment in this case. Accordingly, the court denies both parties' motions for summary judgment.