No. 2-17-0835
Opinion filed July 11, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MUIRHEAD HUI L.L.C; ROBERT C. MUIRHEAD; MARGARET M. MARCOM; THE ROBERT C. MUIRHEAD DECLARATION OF TRUST DATED OCTOBER 29, 1991; MICHAEL PETERSDORF; and SARAH PETERSDORF, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 17-MR-152 |
| THE FOREST PRESERVE DISTRICT OF KANE COUNTY; MICHAEL KENYON, in His Official Capacity as President of the Forest Preserve District of Kane County; MONICA MEYERS, in Her Official Capacity as Executive Director of the Forest Preserve District of Kane County; KINNALLY FLAHERTY KRENTZ LORAN HODGE & MASUR, P.C.; and GERALD HODGE, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) ) | Honorable David R. Akemann, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Burke and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1     The instant case concerns the interpretation of a restrictive covenant and whether the

sellers retained any property rights after they sold their property.  The circuit court of Kane

County found that they did not and therefore dismissed their complaint. The sellers appeal from the trial court's order. We affirm.

¶ 2                                    BACKGROUND

¶ 3       In 2003, the plaintiffs Muirhead Hui L.L.C., Robert C. Muirhead, Margaret M. Marcom, and the Robert C. Muirhead Declaration of Trust Dated October 29, 1991, sold some parcels of land to the defendant the Forest Preserve District of Kane County (the District). Other individuals who are not parties to this suit also sold some parcels to the District. The land the District acquired totaled 531.8 acres and would become known as the Muirhead Springs Forest Preserve. The District hoped to receive a grant from the Department of Natural Resources (DNR) in order to make certain improvements to the land. In order to facilitate receiving that grant, the District included a restrictive covenant with the deeds that were recorded on September 25, 2003. That covenant stated:

> "The real property described herein must be maintained for public outdoor recreation use purposes only as prescribed by the State of Illinois, Department of Natural Resources under terms of the State's Open Space Lands Acquisition & Development (OSLAD) grant program and shall not be sold or exchanged or have other encumbrances places [*sic*] on the title, in whole or in part, which divests control or interest in the property to another party without prior approval from the State of Illinois, Department of Natural Resources or its successor."

¶ 4       On January 21, 2004, one of the deeds was rerecorded to correct a scrivener's error in the legal description.

¶ 5       On January 4, 2005, all of the deeds were rerecorded to add specific DNR covenant and grant language. The new covenant was titled, "Historic and Natural Resources Preservation

Covenant For 531.8 acres of the Muirhead Springs Acquisition by the Kane County Forest Preserve District, Kane County," and it placed additional restrictions on the property.

¶ 6    On August 14, 2005, the District sent to the DNR a letter requesting to modify the boundaries of the Muirhead Springs Forest Preserve project.  The District stated that it intended to restore all of the land "to native prairie and pay particular attention to restoration in the wetland areas and near the naturally occurring springs."  The District further stated, however, that it could not restore all of the land at once.  The District therefore requested that it be allowed to reduce the project from the original 531.8 acres to 200 acres at the northern end of the property.  The parcels sold by the plaintiffs were not adjacent to these 200 acres.

¶ 7    On March 21, 2006, the DNR sent to the District a letter approving the District's request to reduce the project to 200 acres.  The DNR also approved a grant of $750,000.

¶ 8    In 2013, Commonwealth Edison (ComEd) publicly announced that it was planning a new transmission-line construction project, the Grand Prairie Gateway Project (GPG Project), that would run through Ogle, De Kalb, Kane, and Du Page Counties.  On December 2, 2013, ComEd filed with the Illinois Commerce Commission (ICC) a petition seeking approval to construct the GPG Project, under the Public Utilities Act (220 ILCS 5/1-101 *et seq.* (West 2012)).  In 2014, the ICC granted the District's petition to intervene in the proceedings.  The District recommended that the GPG Project transmission line go through the Muirhead Springs Forest Preserve.  ComEd raised a concern as to whether the line could go through that property, in light of the restrictive covenant in the 2005 deeds.

¶ 9    On June 30, 2014, the defendant attorney Gerald Hodge, acting as counsel for the District, rerecorded the deeds for the property at issue.  The rerecorded deeds removed all of the restrictive-covenant language.

¶ 10    On October 22, 2014, the ICC approved the GPG Project, but it did not adopt the District's proposed route through the Muirhead Springs Forest Preserve. Thereafter, owners of land along the approved route petitioned the ICC to rehear the matter and reconsider the route preferred by the District. On November 25, 2014, the ICC granted rehearing.

¶ 11    On December 5, 2014, ComEd's attorney sent Hodge a letter explaining that he did not consider Hodge's unilateral, manual striking of the restrictive-covenant language as legally effective to release the use restrictions. He opined that both the plaintiffs and the District would need to execute appropriate recordable instruments in order to release the restrictions. Hodge thereafter asked the plaintiffs to release the restrictions. They refused to do so. Hodge did not inform the plaintiffs that he had already removed the restrictive-covenant language from the deeds and rerecorded them.

¶ 12    During the ICC rehearing, the plaintiffs Michael Petersdorf and his wife Sarah (Muirhead) Petersdorf filed a petition to intervene. They owned land adjacent to Muirhead Springs Forest Preserve where the District proposed that the GPG Project should be routed. The ICC granted their petition to intervene.

¶ 13    During the rehearing proceedings, ComEd submitted the written testimony of its land title expert, Susan Woods. She stated that ComEd could not rely on the District to provide a valid easement for the construction of a transmission line through the Muirhead Springs Forest Preserve, because the parcels at issue had been conveyed with use restrictions. The District insisted that the GPG Project could be routed through the Muirhead Springs Forest Preserve and along the edge of the Petersdorfs' property, because the restrictive covenants no longer applied to the relevant parcels.

¶ 14    On April 8, 2015, the ICC denied the District's proposed route, explaining "that the relevant parcels that comprise [the Muirhead Springs Forest Preserve] may be subject to a series of deed restrictions that appear to preclude use of those properties for the [GPG] Project."

¶ 15    On June 23, 2015, the plaintiffs sent to Hodge a letter demanding that he rerecord the deeds at issue and restore the restrictive covenant. He refused to do so.

¶ 16    On January 31, 2017, the plaintiffs filed a six-count complaint against the District and the defendants Michael Kenyon, in his capacity as its president, and Monica Meyers, in her capacity as its executive director (collectively the District defendants). The suit also named Hodge and his law firm, Kinnally Flaherty Krentz Loran Hodge & Masur P.C. (the Hodge defendants). The complaint sounded in mandamus, declaratory judgment, breach of contract, intentional interference with real property interest, breach of fiduciary duty, and legal malpractice. The complaint requested that the defendants be mandated to restore the restrictive covenant to the deeds and that the defendants pay the plaintiffs all the attorney fees they incurred in protecting their rights.

¶ 17    On April 7, 2017, both the District defendants and the Hodge defendants filed motions to dismiss the plaintiff's complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)). All the defendants argued that the plaintiffs lacked standing to bring their claims and that the defendants owed no duty to them. The District defendants further argued that the plaintiffs' action against them was barred by the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-201 (West 2016)).

¶ 18    On September 19, 2017, the trial court dismissed the plaintiffs' complaint due to lack of standing. The trial court found that the language in the restrictive covenant did not confer any

rights upon the plaintiffs to bring their action against the defendants. The plaintiffs thereafter filed a timely notice of appeal.

¶ 19                                                    ANALYSIS

¶ 20    The issue before this court is whether the trial court erred in dismissing the complaint pursuant to section 2-619 of the Code due to lack of standing.

¶ 21    The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). Section 2-619(a)(9) permits involuntary dismissal where "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2016). The phrase "affirmative matter" refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994). Lack of standing is an "affirmative matter" that is properly raised under section 2-619(a)(9). *Glisson v. City of Marion*, 188 Ill. 2d 211, 220-21 (1999). An order granting this type of motion to dismiss is given *de novo* review on appeal. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993).

¶ 22    The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit. The doctrine ensures that issues are raised only by those parties with a real interest in the outcome of the controversy. *Glisson*, 188 Ill. 2d at 221. Standing requires some injury in fact to a legally cognizable interest. *Id*. The claimed injury can be actual or threatened, and it must be (1) distinct and palpable, (2) fairly traceable to the defendant's actions, and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492-93

(1988). Moreover, in the context of an action for declaratory relief, there must be an actual controversy between adverse parties, and the party requesting the declaration must possess some personal claim, status, or right that is capable of being affected by the grant of such relief. *Id*. at 493.

¶ 23    Generally, one who sells land relinquishes all rights to that property. *Foxfield Realty, Inc. v. Kubala*, 287 Ill. App. 3d 519, 524 (1997). An exception to this rule is if one sells land subject to a restrictive covenant that limits how the property may be used. *Hays v. St. Paul Methodist Episcopal Church*, 196 Ill. 633, 634 (1902). However, restrictions on the use of property conveyed in fee are not favored; thus, courts will enforce covenants only if they are reasonable, clear, definite, and not contrary to public policy. *Sadler v. Creekmur*, 354 Ill. App. 3d 1029, 1036 (2004); see also *Watts v. Fritz*, 29 Ill. 2d 517, 521 (1963) ("[r]estrictive covenants are strictly construed in favor of the full and unlimited legitimate use of property, and where there is any doubt, the matter must be resolved in favor of natural rights and against restrictions" (internal quotation marks omitted)).

¶ 24    Here, the plaintiffs sold the land at issue to the District.[1] The language of the restrictive covenants in the deeds required that the property "be maintained for public outdoor recreation use purposes only as prescribed by the [DNR] under terms of the Open Space Lands Acquisition & Development (OSLAD) grant program." The covenant further provided that the property could not be sold and that no encumbrances could be placed on the title "without prior approval from the [DNR] or its successor." We find it significant that the covenant made no reference to

_____

[1] Sarah Petersdorf is a member and manager of Muirhead Hui, L.L.C., one of the sellers of the land to the District. For the purposes of our analysis, we therefore consider Sarah Petersdorf and her husband Michael Petersdorf as sellers of the land at issue.

the prior owners of the property. Rather, it is apparent that the covenant was added by the District in order to comply with the terms of the OSLAD grant program. The covenant further provided that the property could be encumbered, or even sold, if the DNR approved. Thus, it is clear that the District added the covenant in order to benefit the DNR, not the previous property owners. Once the DNR agreed that the covenant could be removed as to the property at issue, the District could use the property however it saw fit. See *Foxfield Realty, Inc.*, 287 Ill. App. 3d at 524.

¶ 25 Relying on *VanSant v. Rose*, 260 Ill. 401, 402-03 (1913), *Hays*, 196 Ill. at 634, and *Freehling v. Development Management Group, Inc.*, 75 Ill. App. 3d 243, 245 (1979), the plaintiffs insist that conveying property subject to restrictions gives the *grantor* a legally recognized and continuing property interest. Relying on *In re Application of Busse*, 124 Ill. App. 3d 433, 442 (1984), and *Citizens National Bank of Downers Grove v. Morman*, 78 Ill. App. 3d 1037, 1043 (1979), the plaintiffs argue that one party to a contract cannot alter the contract's terms without the second party's agreement. We agree with the above principles. However, that does not help the plaintiffs, because they did not convey the property subject to a restrictive covenant. The plaintiffs insist that they reserved an interest in the land and "sold the property based on the placement of use restrictions in the deeds." The plaintiffs' argument is contradicted by the plain language of the deeds, the sales agreement, and the record on appeal. The deeds clearly provide that the DNR can approve the removal of the restrictive covenant. It would therefore be absurd to find that the plaintiffs conveyed the property subject to a restrictive covenant but then gave a third party—the DNR—unfettered discretion to terminate the restrictive covenant. The absurdity is compounded by the fact that the record reveals no relationship between the DNR and the plaintiffs. This court, of course, will not interpret a deed in a way that

leads to an absurd result. *Pfeffer v. Lebanon Land Development Corp.*, 46 Ill. App. 3d 186, 191 (1977).

¶ 26    The plaintiffs insist that in selling their property they relied on the assurances in the restrictive covenant that the land would be forever "maintained for public outdoor recreation use purposes." However, the sales agreements reflect a different reason why the plaintiffs agreed to the restrictive covenant. The sales agreements stated that the plaintiffs agreed to cooperate with the District to complete and execute all documentation necessary for the District to receive a grant. Reading the sales agreements and the restrictive covenant together, it is apparent that the purpose of the restrictive covenant was to facilitate the District receiving a grant—not to benefit the plaintiffs. Moreover, even if the plaintiffs believed that they were selling their land pursuant to a restrictive covenant that would permanently prevent the land from being developed, that subjective intent cannot overcome the plain language of the deeds. See *Blackhawk Hotel Associates v. Kaufman*, 80 Ill. App. 3d 462, 465 (1979) ("It is not what one of the parties may have intended that controls, but what is shown by the contract to have been the intention of both parties.").

¶ 27    We note that the plaintiffs point to one other case—*Streams Sport Club, Ltd. v. Richmond*, 109 Ill. App. 3d 689 (1992)—in support of their claim that they had standing to bring this action. In that case, at issue was whether the plaintiff was a third-party beneficiary of a contract between the original developer and the defendant so that the plaintiff could enforce the contract against the defendant. *Id.* at 694. This court found that, as the plaintiff was the successor to the interest of the original developer, he was the real party in interest, as the intended beneficiary of the contract, and therefore had standing to sue the defendant for breach

of contract.  *Id.*  *Streams* is clearly distinguishable from this case because the plaintiffs here are not successors to the interest of the DNR and its agreement with the District.

¶ 28    As we have determined that the plaintiffs lacked standing to bring their claims, we need not address the other issues that they raise on appeal.

¶ 29                                CONCLUSION

¶ 30    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 31    Affirmed.