Rule 23 order filed          2020 IL App (5th) 190339
August 17, 2020.
Motion to publish granted          NO. 5-19-0339
September 8, 2020.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| MITCHELL/ROBERTS PARTNERSHIP, an Illinois General Partnership; REBA L. MITCHELL, Trustee and Beneficiary of the Robert H. Mitchell Residual Trust; CARL INMAN, Independent Executor of the Estate of Russell J. Inman, Deceased; CAROL DEAN CRABTREE; ROBIN LYNNE KEE WILLIAMS; JOHN MILO KEE; NELDA BALDWIN, Personal Representative of the Estate of Beverly B. Adams, Deceased; NELDA BALDWIN, Personal Representative of the Estate of Katherine Baldwin, Deceased; and DAVID SENSENEY, Executor of the Estate of Margueritte Boos, Deceased, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Williamson County. |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | No. 14-MR-285 |
| WILLIAMSON ENERGY, LLC, a Delaware Limited Liability Company, COLT, LLC, a West Virginia Limited Liability Company, INDEPENDENCE LAND COMPANY, LLC, a Delaware Limited Liability Company, and WPP, LLC, a Delaware Limited Liability Company, PAULA NEWCOMB, VINCE SNEED, ROBERT C. WILSON, CHRISTIE BROWN, JONI MILLER, and FANNIE MILLER, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | Honorable Jeffrey A. Goffinet, Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.
Presiding Justice Welch and Justice Wharton concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs, Mitchell/Roberts Partnership (Mitchell/Roberts), an Illinois general partnership; Reba L. Mitchell, trustee and beneficiary of the Robert H. Mitchell Residual Trust; Carl Inman, independent executor of the estate of Russell J. Inman, deceased; Carol Dean Crabtree; Robin Lynne Kee Williams; John Milo Kee; Nelda Baldwin, personal representative of the estate of Beverly B. Adams, deceased; Nelda Baldwin, personal representative of the estate of Katherine Baldwin, deceased; and David Senseney, executor of the estate of Margueritte Boos, deceased, appeal the July 24, 2019, judgment of the circuit court of Williamson County that denied their motion for partial summary judgment on the construction of certain provisions regarding the conveyance of rights of subjacent and sublateral support (subsidence rights) pertinent to the surface as set forth in five mineral deeds known as the "Pierce Deeds" (Pierce Deeds A-E)[1] that were executed and recorded in 1913 and 1914.

¶ 2    The circuit court granted summary judgment in favor of moving defendants Williamson Energy, LLC, a Delaware limited liability company (WE); Colt, LLC, a West Virginia limited liability company (Colt); Independence Land Company, LLC, a Delaware limited liability company (ILC); and WPP, LLC, a Delaware limited liability company (WPP) (the defendants), regarding the issue of the construction of said provisions in the Pierce Deeds, finding that subsidence rights were conveyed in all 135 parcels of real estate described in the Pierce Deeds,[2] rather than in only 15 of the parcels as alleged by the plaintiffs.[3]

---

[1]Only Pierce Deeds A-D are relevant to this appeal, to be explained in greater detail, *infra*.

[2]Only 127 parcels, as set forth in Pierce Deeds A-D, are relevant to this appeal.

[3]The plaintiffs allege that subsidence rights were conveyed in only 12 of the parcels in Pierce Deeds A-D.

2

¶ 3    Defendants Paula Newcomb, Vince Sneed, Robert C. Wilson, Christie Brown, Joni Miller, and Fannie Miller (Choate defendants) may claim an interest in the coal in an underlying portion of the parcels at issue by virtue of a tax deed (Choate Deed). Accordingly, the Choate defendants were joined as necessary parties. However, the Choate defendants have made no claim regarding the Deep Coal[4] or the mining rights corresponding thereto as set forth in the Pierce Deeds and did not join in the defendants' motions for summary judgment. Accordingly, the Choate defendants are excluded from any reference to "defendants" in this disposition, and that term hereinafter exclusively represents the aforementioned moving defendants. For the following reasons, we affirm the circuit court's judgment, as we find the subsidence rights conveyed in the Pierce Deeds unambiguously applied to all 127 parcels described in the deeds, rather than only 12 parcels as alleged by the plaintiffs. In the alternative and assuming, *arguendo*, that the Pierce Deeds are ambiguous, we affirm based on other evidence in the record that shows that the parties of the deeds intended to convey subsidence rights in all 127 parcels and such rights were conveyed as a matter of law.

¶ 4                                   BACKGROUND

¶ 5                                    I. Review

¶ 6    At the outset, we provide a brief review of mineral deeds, subsidence, and coal mining techniques to contextualize the underlying litigation and the issue on appeal.

¶ 7                              A. *Mineral Deeds*

¶ 8    The Pierce Deeds at issue in this appeal are mineral deeds. In Illinois, common law and statutory law establish that mineral rights may be severed and owned separately from the surface

---

[4]The coal lying below the depth of 125 feet that was conveyed to the grantee in the Pierce Deeds is referred to as Deep Coal.

land. A real estate owner may either convey by deed or reserve title to any minerals existing beneath the surface of the real estate. To that regard, the Illinois Supreme Court in *Manning v. Frazier*, 96 Ill. 279, 283-84 (1880), recognized that minerals under the soil are real estate and, as such, are capable of conveyance by deed. Likewise, section 1(a) of the Severed Mineral Interest Act (Act) defines a severed mineral interest as "any whole or fractional interest in any or all minerals which have been severed from the surface estate by grant, exception, reservation or other means." 765 ILCS 515/1(a) (West 2016).

¶ 9                                    B. *Subsidence*

¶ 10    Section 1(c) of the Act defines a surface owner as "any person or entity vested with a whole or undivided fee simple interest or other freehold interest in the surface estate overlying a severed mineral interest ***." *Id.* § 1(c). The surface owner is, as a matter of law, entitled to subjacent support from the owner of the subjacent mineral interest. *Lloyd v. Catlin Coal Co.*, 210 Ill. 460, 468 (1904). "This right of support is absolute and without condition ***." *Id*. However, " '[l]ike any other right, the owner of the surface may part with the right to support, by his deed or covenant.' " *Wesley v. Chicago, Wilmington & Franklin Coal Co.*, 221 Ill. App. 427, 433 (1920) (quoting *Williams v. Hay*, 120 Pa. St. 485). The surface owner may also agree in the deed "to waive and release all damages caused by the loss of subjacent support." *Mason v. Peabody Coal Co.*, 320 Ill. App. 350, 352-53 (1943). However, such agreements are strictly construed "and courts will not find that there has been a waiver or release of the right of subjacent support unless the intention to give such a waiver or release clearly appears either by express words or by necessary implication from the language used." *Id*. at 353.

4

¶ 11                              C. *Mining Techniques*

¶ 12    Room and pillar mining is an underground mining technique in which rooms are created by removing coal in sections while pillars are left in place between the rooms to provide sufficient support for the overlying strata. *Lloyd*, 210 Ill. at 463. Longwall mining, on the other hand, is a mining technique in which subsidence is planned (*Old Ben Coal Co. v. Department of Mines & Minerals*, 204 Ill. App. 3d 1062, 1072 (1990)) and very high rates of coal are extracted (*Citizens Organized Against Longwalling v. Division of Reclamation, Ohio Department of Natural Resources*, 535 N.E.2d 687, 689 (Ohio Ct. App. 1987)).

¶ 13    In longwall mining, tunnels are created to separate large blocks of coal known as "longwall panels" that measure 5 feet high, 500 to 700 feet wide, and 5000 feet long. *Citizens*, 535 N.E.2d at 689. Machines that are secured beside the longwall panels gradually grind through the panels to tear the coal away. *Continental Resources of Illinois, Inc. v. Illinois Methane, LLC*, 364 Ill. App. 3d 691, 694 (2006). Hydraulic supports are used to hold up the mine roof, and as the machines advance through the longwall panels, the supports follow. *Citizens*, 535 N.E.2d at 689. As the roof supports progress through the panels, voids are left and the ceiling of the mine collapses, resulting in near immediate subsidence of the overlying strata. *Id*.

¶ 14                              II. The Pierce Deeds

¶ 15    Between March 12, 1913, and July 29, 1914, the Pierce Deeds were executed by grantors George S. Roberts and May Roberts to grantee Charles I. Pierce. Pierce Deeds A-D comprise 127 parcels of land in Williamson County. The Pierce Deeds all begin with the following Granting Clause:

"THE GRANTORS, GEORGE S. ROBERTS and MAY ROBERTS, his wife, of the town of Corinth, in the County of Williamson and State of Illinois, *** do hereby grant, bargain,

5

sell, convey and warrant to CHARLES I. PIERCE, all the coal lying below the depth of One Hundred Twenty Five (125) feet from the surface of the following described real estate, *** in Williamson County, Illinois, to wit:"

¶ 16    Pierce Deed A comprises 83 parcels, Pierce Deed B comprises 21 parcels, Pierce Deed C comprises 16 parcels, and Pierce Deed D comprises 7 parcels, for a total of 127 parcels. All parties agree that the Pierce Deeds all share a similar wording and organizational structure. In particular, the Pierce Deeds all contain the following: (1) the above-cited Granting Clause; (2) repeated patterns of groups of parcels with the legal description of each individual parcel and a corresponding reference to the Source Deed in which, *inter alia*, coal in that particular parcel was previously conveyed to George S. Roberts; (3) associated mining rights that are situated at the end of each group of parcels and are provided in: (a) a "together with" clause which grants certain mining rights including, *inter alia*, subsidence rights; (b) a second "together with" clause which grants the rights of ingress and egress over the surface of the parcels for the purpose of prospecting and drilling for coal (Exploration Easement); and often but not always (c) a 10-year option to purchase surface acreage necessary to carry out mining operations at a specified price per acre (Surface Option); (4) a reservation of oil and gas rights applicable to all of the parcels listed in the Pierce Deeds; and (5) a release of rights under the homestead exemption laws applicable to all of the parcels listed in the Pierce Deeds.

¶ 17    The "together with" clauses and Exploration Easements are the same throughout the Pierce Deeds, but the existence and prices per acre of the Surface Options vary. These three provisions— the "together with" clause, the Exploration Easement, and the Surface Option, when present—are consistently presented together as a group throughout the Pierce Deeds. As noted, all parties agree that Pierce Deeds A-D all share similar wording and organizational structure. Accordingly, for the

6

sake of brevity, we will examine in detail only Pierce Deed A in this disposition. However, the parties' arguments, our analysis, and the resolution of the issue on appeal apply equally to Pierce Deeds A-D.

¶ 18                                              A. *Pierce Deed A*

¶ 19   Pierce Deed A was executed on March 12, 1913 and recorded on March 15, 1913. As observed, Pierce Deed A is relevant to 83 of the 127 parcels at issue and commences with the above-said Granting Clause. After the Granting Clause, Pierce Deed A sets forth the legal descriptions of the first 67 parcels within the deed, each with its own heading which denotes the corresponding parcel number, *i.e.*, "PARCEL NO. 1," "PARCEL NO. 2," "PARCEL NO. 3," etc. Each parcel number heading is immediately followed by the legal description of that corresponding parcel.

¶ 20   Every legal description of every parcel within Pierce Deed A concludes by referencing information derived from a Source Deed that includes the name(s) of the former grantor(s) who conveyed, *inter alia*, coal in that particular parcel to George S. Roberts and the date of the conveyance. For example, the reference to the Source Deed at the end of the legal description of PARCEL NO. 1 in Pierce Deed A provides: "and being the same land conveyed by Howard Harrison, a widower, to George S. Roberts, on February 18th, 1913." The legal descriptions of all 127 parcels at issue in this appeal conclude by referencing the Source Deed information for each particular parcel and all are structured in the same fashion as the quoted example of the Source Deed information situated at the end of the legal description of PARCEL NO. 1 in Pierce Deed A.

¶ 21   As noted, after the Granting Clause, Pierce Deed A lists the legal descriptions and Source Deed information for PARCEL NO. 1 through PARCEL NO. 67. Following the legal description

7

and Source Deed information of PARCEL NO. 67, Pierce Deed A provides the following "together with" clause:

> "TOGETHER with the right to mine, dig, and remove the coal therefrom and the right to dig the entire quantity or a less quantity of said coal at the grantee's option, without leaving any support for the overlying strata, and without liability for any injury or damage which may result from the mining and removal of said coal, whether caused by the breaking of said strata or otherwise, and to ventilate and drain the mines and said coal by such openings, shafts, drill holes, pipes, trenches, structures and appliances as are reasonably necessary and best adapted for such purposes, and the right to mine, ventilate and drain the coal of other lands and transport such other coal through and by means of the mines, openings, shafts, structures and appliances upon such lands, and the right to mine and remove so much of other minerals as may be desirable or necessary in order to properly mine and remove said coal."

¶ 22 Immediately following the above-cited "together with" clause is an Exploration Easement, which provides:

> "And together with the right of ingress and egress over the surface of said lands above said coal, for the purpose of prospecting and drilling for coal under said lands, and the right to erect such structures as are reasonably necessary to the carrying out of such work, without liability for any damage or claims for damages which may arise from said drilling and prospecting."

¶ 23 After the Exploration Easement is a Surface Option, which provides as follows:

> "The said grantors, their heirs or assigns, further agree to sell and convey to said grantee, his heirs or assigns, at the price of Sixty (60) Dollars per acre, by warranty deed,

8

free and clear of all encumbrances, including dower and right of dower, and with release of all rights under the Homestead Exemption Laws of the State of Illinois, at any time within ten (10) years from January 13th, 1913, such portion of the surface of the above described real estate, as may be necessary or desirable in the opinion of the grantee, his heirs or assigns, for the erection of tipples, grades, buildings, power houses, railroad tracks, switches and other improvements necessary or desirable in the mining, refining, obtaining, marketing and removing of said coal; provided, however, that the width of the right of way for a railroad shall not exceed sixty (60) feet, and that no land may be purchased for mining operations within three hundred (300) feet of the principal buildings located on said surface of said real estate."

¶ 24    After the Surface Option, Pierce Deed A lists the legal descriptions and Source Deed information for PARCEL NO. 68 through PARCEL NO. 75, each set forth and arranged the same as PARCEL NO. 1 through PARCEL NO. 67. After the legal description and Source Deed information of PARCEL NO. 75, Pierce Deed A provides a "together with" clause and an Exploration Easement—each identical to those quoted *supra*—followed by a second Surface Option, similar to the first, except the second Surface Option price is $100 per acre as compared to $60 per acre in the first Surface Option.

¶ 25    After the Surface Option following PARCEL NO. 75, Pierce Deed A lists the legal description and Source Deed information for PARCEL NO. 76, which is set forth and arranged the same as the preceding parcels. After the legal description and Source Deed information of PARCEL NO. 76, Pierce Deed A provides the same "together with" clause and Exploration Easement, followed by a third Surface Option, with a price of $70 per acre.

9

¶ 26　　After the Surface Option following PARCEL NO. 76, Pierce Deed A provides the legal description and Source Deed information for PARCEL NO. 77—which is arranged the same as the preceding parcels—followed by the same "together with" clause and Exploration Easement. No Surface Option follows the Exploration Easement in this instance.

¶ 27　　After the "together with" clause and Exploration Easement following PARCEL NO. 77, Pierce Deed A provides the legal descriptions and Source Deed information of PARCEL NO. 78 through PARCEL NO. 83, each arranged the same as the aforementioned parcels. After the legal description and Source Deed information of PARCEL NO. 83, the same "together with" clause and Exploration Easement are provided, followed by a fourth Surface Option, with a price of $75 per acre.

¶ 28　　Finally, Pierce Deed A contains a clause reserving all oil and gas below the surface of the real estate, which provides as follows: "The Grantors hereby reserve all oil and gas below the surface of the real estate above described in Parcels Numbers One (1) to Eighty Three (83), both inclusive." Following the oil and gas reserve is a clause waiving the grantors' homestead exemption rights, which provides as follows: "The Grantors hereby release and waive all their rights under and by virtue of the Homestead Exemption Laws of the State of Illinois to all the coal underlying the lands hereinbefore described in Parcels Numbers One (1) to Eighty-[T]hree (83), both inclusive."

¶ 29　　　　　　　　　　　　　III. The Litigation

¶ 30　　The plaintiffs filed their original complaint on November 26, 2014. The operative, third-amended complaint (Complaint) was filed on September 5, 2017, and referenced all 135 parcels set forth in Pierce Deeds A-E. However, it was subsequently discovered that the plaintiffs did not

have a claim for the eight parcels described in Pierce Deed E. Accordingly, only the 127 parcels described in Pierce Deeds A-D are relevant to this appeal.

¶ 31                                                    A. *Parties*

¶ 32    Plaintiff Mitchell/Roberts alleges that coal exists above the depth of 125 feet from the surface of the parcels described in the Pierce Deeds (Shallow Coal) and claims ownership of the same, as the successor in interest to grantors George S. Roberts and May Roberts. The individually named plaintiffs are the individual owners of Mitchell/Roberts and allege, in the alternative, that they are the successors in interest to the grantors and have, through two partnership agreements executed in January and March 2015, conveyed their individual interests to Mitchell/Roberts. The plaintiffs contend that the defendants have the right to subside only 12 of the 127 parcels, pursuant to the language of the Pierce Deeds. The plaintiffs do not challenge defendant WE's right to mine and remove the Deep Coal so long as subsidence of the surface does not result in any parcels other than said 12 parcels. Accordingly, the plaintiffs contend that the defendants may utilize longwall mining only in those 12 parcels and must use room and pillar mining in the remaining 115 parcels.

¶ 33    Defendants Colt, ILC, and WPP claim ownership of the Deep Coal in the parcels described in the Pierce Deeds as successors in interest to grantee Charles I. Pierce. Defendants Colt, ILC, and WPP leased the Deep Coal to defendant WE, which has mined the # 6 seam of coal at its Pond Creek Mine since 2008, utilizing the longwall mining method which, as indicated, involves planned subsidence. The defendants claim that the right to subside all 127 parcels was conveyed, pursuant to the language of the Pierce Deeds.

¶ 34                                                    B. *Complaint*

¶ 35    The Complaint consisted of six counts. Count I—which encompasses the crux of this appeal—sought a declaration of rights involving the legal construction of provisions in the Pierce

Deeds pertaining to the conveyance of subsidence rights. Count II sought to quiet title to the subjacent and sublateral support of the Shallow Coal and sought to permanently enjoin any further removal of such subjacent and sublateral support from the parcels described in the Pierce Deeds. Count III alleged unjust enrichment resulting from the trespass and removal of subjacent support from the parcels. Counts IV, V, and VI—which sought the same relief as counts I, II, and III— were added as alternative counts on behalf of the individually named plaintiffs because the defendants allegedly challenged the existence of Mitchell/Roberts as a partnership.

¶ 36              C. *Plaintiffs' Motion for Partial Summary Judgment*

¶ 37    On January 26, 2018, the plaintiffs filed a motion for partial summary judgment, pursuant to section 2-1005(d) of the Illinois Code of Civil Procedure (735 ILCS 5/2-1005(d) (West 2016))— which allows a court to enter summary judgment on one or more of the major issues in a case. The plaintiffs sought partial summary judgment on count I of the Complaint concerning the legal construction of the provisions of the Pierce Deeds pertaining to the conveyance of subsidence rights. The plaintiffs conceded that if the circuit court did not accept their proposed construction of the Pierce Deeds, all counts of the Complaint would be defeated.

¶ 38              D. *Defendants' Motions for Summary Judgment*

¶ 39    On November 1, 2018, the defendants filed motions for summary judgment on all counts of the Complaint.

¶ 40              E. *Circuit Court's Judgment*

¶ 41    On July 15, 2019, the circuit court entered its judgment, finding that the "together with" clauses in the Pierce Deeds—which conveyed subsidence rights—applied to the entire series of parcels listed above each instance of the clause, rather than the single parcel immediately preceding each instance of the clause as suggested by the plaintiffs. The circuit court found the Pierce Deeds

12

were unambiguous and stated that common sense compelled the finding that the clauses applied to all the parcels in the Pierce Deeds. The circuit court considered the defendants' remaining arguments in their motions for summary judgment but declined to address them, not only in light of the judgment, but also because the circuit court found *bona fide* factual disputes existed regarding those arguments. The circuit court observed that its ruling disposed of all counts of the Complaint. Accordingly, the circuit court denied the plaintiffs' motion for partial summary judgment and granted the defendants' motions for summary judgment as to all counts of the Complaint. On July 24, 2019, the circuit court entered a *nunc pro tunc* judgment which corrected errors in the first judgment that misidentified certain parties. The plaintiffs filed a timely notice of appeal.

¶ 42                                    ANALYSIS

¶ 43     The sole issue on appeal is restated as follows: Whether the circuit court erred in denying the plaintiffs' motion for partial summary judgment and granting summary judgment in favor of the defendants by finding that subsidence rights were conveyed in all 127 parcels described in Pierce Deeds A-D. "A trial court's decision to grant summary judgment should only be made where there is no genuine issue of material fact." *Hernandez v. Alexian Brothers Health System*, 384 Ill. App. 3d 510, 518 (2008). "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 305 (2005).

¶ 44                               I. Standard of Review

¶ 45     *De novo* is the proper standard of review on a circuit court's ruling on a motion for summary judgment (*Jackson v. Graham*, 323 Ill. App. 3d 766, 779 (2001)) as well as on the resolution of the construction of a deed, which is a question of law (*Timothy Christian Schools v. Village of Western Springs*, 285 Ill. App. 3d 949, 954 (1996)). "Accordingly, we afford no deference to the trial court's decision and instead, we consider anew the pleadings, affidavits, depositions, admissions, and exhibits on file to determine whether the trial court's decision was correct." *Jackson*, 323 Ill. App. 3d at 779.

¶ 46                          II. Construction of the Pierce Deeds

¶ 47     At issue in this appeal is the construction of the "together with" clause, which appears 12 times throughout Pierce Deeds A-D. As previously discussed in detail, the "together with" clause appears five times in Pierce Deed A—after the legal descriptions of PARCEL NO. 67, PARCEL NO. 75, PARCEL NO. 76, PARCEL NO. 77, and PARCEL NO. 83. Again, each instance of the "together with" clause is immediately followed by the Exploration Easement, each of which is, in turn, followed by the Surface Option, where present. The "together with" clause grants, *inter alia*, "the right to mine, dig, and remove the coal *** without leaving any support for the overlying strata." The issue on appeal may be summarized by the following question: To which parcels does the right to subside the surface—as set forth in the "together with" clause—apply?

¶ 48     The plaintiffs argue that the "together with" clause applies only to PARCEL NOS. 67, 75, 76, 77, and 83 because those are the parcels that immediately precede each instance of the clause in Pierce Deed A. Conversely, the defendants argue that each instance of the "together with" clause applies to the entire *series* of parcels that precedes it. Accordingly, the defendants contend that the clause applies to all 83 parcels in Pierce Deed A.

14

¶ 49                    A. *Principles of Deed Construction*

¶ 50    "In construing a deed, our primary goal is to ascertain the intent of the parties." *Diaz v. Home Federal Savings & Loan Ass'n of Elgin*, 337 Ill. App. 3d 722, 727 (2002). In interpreting intent, like principles are applied to deeds, trusts, and wills. *Storkan v. Ziska*, 406 Ill. 259, 263 (1950). "The deed should be construed so as to carry out this intention, as gathered from the instrument as a whole, and every word in the deed should be considered and, if possible, given effect." *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 467 (1991). No words in a deed are to be rejected as meaningless, repugnant, or surplusage. *Dolley v. Powers*, 404 Ill. 510, 513 (1949). This is because "it is presumed that every clause *** was inserted deliberately and for a purpose." *Platt v. Gateway International Motorsports Corp.*, 351 Ill. App. 3d 326, 329 (2004). Rules applicable to the construction of deeds are founded in reason, law, and common sense. *Peckham v. Haddock*, 36 Ill. 38, 46 (1864). Courts will not construe a deed in a way that leads to an absurd result. *Muirhead Hui L.L.C. v. Forest Preserve District of Kane County*, 2018 IL App (2d) 170835, ¶ 25.

¶ 51    "Absent an ambiguity in the deed, the intention of the parties must be discerned solely from the language of the instrument, without consideration of extrinsic factors." *Urbaitis*, 143 Ill. 2d at 467. Moreover, language is not considered ambiguous merely because the parties disagree on its meaning. *Estate of Rector v. Williams*, 262 Ill. App. 3d 1076, 1080 (1994). Rather, ambiguity exists where the language is susceptible to more than one reasonable interpretation. *Id*. Here, all parties allege that the Pierce Deeds are unambiguous. We agree. Accordingly, we derive our conclusion regarding the construction of the Pierce Deeds solely from the language within the four corners of the deeds and look to nothing outside the documents themselves to reach that conclusion. See *Urbaitis*, 143 Ill. 2d at 467.

15

¶ 52                    B. *Application of Deed Construction Principles*

¶ 53    Here, the plaintiffs contend that common sense requires an interpretation that the "together with" clauses apply only to the parcels that immediately precede them. In so arguing, the plaintiffs strenuously emphasize the importance of the four corners rule. At oral argument, the plaintiffs stressed that neither the Source Deeds nor the Pierce Amendment[5] may be considered because doing so would violate the four corners rule, as these are parol evidence. See *id*. Notwithstanding their emphasis on adhering solely to the four corners, the plaintiffs' common sense arguments are neither founded in nor supported by the language located within the four corners of Pierce Deed A.

¶ 54    The plaintiffs argue that it defies common sense that the grantors would retain the Shallow Coal and grant the right to subside the surface, thereby destroying the Shallow Coal. The plaintiffs further allege that the Deep Coal lying below the depth of 125 feet was conveyed to the grantee in the Pierce Deeds while the grantors as surface owners retained and did not convey the Shallow Coal above the depth of 125 feet from the surface. These claims cannot be confirmed by examining the four corners of Pierce Deed A, as the only coal referenced in Pierce Deed A is Deep Coal. No mention is made of any Shallow Coal or of any coal overlying the Deep Coal. Pierce Deed A only conveyed the Deep Coal and granted rights corresponding thereto. Indeed, a portion of those rights are set forth in the Exploration Easement, which grants, *inter alia*, the right to prospect to determine if and where any coal exists. Accordingly, the existence and amount of any coal was yet to be determined when the Pierce Deeds were executed.

¶ 55    We emphasize that our observation is not intended to be deemed a declaration that no Shallow Coal exists or that the plaintiffs as the surface owners do not own Shallow Coal if it does

---

[5]The Source Deeds and Pierce Amendment will be subsequently discussed in greater detail.

exist. Rather, it is a mere indication that the four corners of Pierce Deed A simply do not support the plaintiffs' "common sense" arguments regarding Shallow Coal. The plaintiffs themselves confirm the same by stating in their reply brief that Shallow Coal "was never the subject of a deed." In adhering to the four corners rule, we look no further than Pierce Deed A itself to determine its meaning and the intent of the parties, and we refuse to entertain arguments that would require us to look beyond what is reflected in the document itself. See *Urbaitis*, 143 Ill. 2d at 467.

¶ 56    The defendants assert that there is a continuing dispute regarding the existence of any Shallow Coal and, if it does exist, whether it is mineable. The circuit court refused to address such arguments and limited its ruling to the construction of the Pierce Deeds because it found *bona fide* factual disputes regarding, *inter alia*, whether Shallow Coal exists over the Deep Coal, whether traces of Shallow Coal are mineable, and whether the Shallow Coal has been harmed due to the defendants' longwall mining operation. The plaintiffs concede the same in their reply brief as a challenge to the defendants' arguments in their motions for summary judgment.

¶ 57    To that regard, the plaintiffs state that whether they own Shallow Coal and whether the subsidence caused any harm to any Shallow Coal involve questions of fact concerning such claims raised by the defendants in their motions for summary judgment, which were rendered moot by the circuit court's denial of the plaintiffs' motion for partial summary judgment on the construction of the Pierce Deeds. The plaintiffs may not have it both ways. They may not assert the existence of Shallow Coal as a *matter* of fact in their opening brief to support their arguments on appeal in an effort to convince this court to reverse the circuit court's denial of their motion for partial summary judgment, then subsequently claim in their reply brief that the existence of Shallow Coal is a *question* of fact, in an effort to challenge the defendants' related arguments in their motions for summary judgment.

17

¶ 58    Indeed, the framing of the plaintiffs' arguments and allegations on appeal regarding common sense and the existence of Shallow Coal assumes disputed matters as true. The circuit court refused to address such arguments for that reason, and we find these arguments unsuitable for our consideration on appeal, as they involve genuine issues of material fact. See *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 305. The issue on appeal is limited to a construction of the "together with" clause and a determination as to which parcels the clause applies. In adhering to the four corners rule, we refuse to consider the plaintiffs' arguments by presuming facts that are not expressed outright in the plain language of Pierce Deed A.

¶ 59    Notwithstanding our refusal to address arguments that would require us to presume as true genuine issues of material fact when the same is not further reflected by Pierce Deed A, we nonetheless distinguish the case cited by the plaintiffs in support of such proposed arguments. In *Kinder v. La Salle County Carbon Coal Co*., 310 Ill. 126, 127 (1923), the parties were disputing the ownership of the sand, gravel, clay, shale, and limestone that existed beneath the agricultural surface and above the coal that was conveyed in a mineral deed. In *Kinder*, there was no dispute regarding the *existence* of the sand, gravel, clay, shale, and limestone, but only the *ownership*. *Id*. We do not consider this case as authority because, here, there is no dispute regarding the ownership of anything overlying the Deep Coal that was conveyed in the Pierce Deeds.

¶ 60    We further refuse to consider *Kinder* because, here, as observed, the existence of Shallow Coal and any arguments derived therefrom entail genuine issues of material fact, and any consideration of the plaintiffs' arguments to this regard would require us to presume such facts as true. We refuse to consider the same to support any arguments regarding the construction of the "together with" clause within the Pierce Deeds.

18

¶ 61 Finally, we refuse to consider *Kinder*, as this court established in *Diaz*, 337 Ill. App. 3d at 728-29, that deeds are *sui generis* and must be interpreted on their own terms. Accordingly, interpretations of deeds in other cases are "largely irrelevant" because each transaction of each deed occurs in a different factual context. *Id.* at 729. "Blindly applying interpretations from other cases to construe deeds *** may just as well defeat the intentions of the parties as advance them." *Id.* On the same basis, we further refuse to consider *Marquette Cement Mining Co. v. Oglesby Coal Co.*, 253 F. 107 (N.D. Ill. 1918), as cited by the plaintiffs. For the stated reasons, the plaintiffs' common sense arguments regarding Shallow Coal fail, as they have no textual support within the four corners of the Pierce Deeds.

¶ 62 Conversely, in applying the four corners rule, we conclude that the plain language necessitates a finding that the "together with" clause applies to all 83 parcels within Pierce Deed A. Again, Pierce Deed A conveyed the Deep Coal in all 83 parcels. Although the heart of the dispute in this case involves the application of the right to subside the surface of the land as set forth in the "together with" clause, besides that right to subside, the "together with" clause also granted, *inter alia*, "*the right to mine, dig, and remove the coal ***.*" (Emphasis added.) See *Urbaitis*, 143 Ill. 2d at 467 (to determine intent, the deed is looked at as a whole and every word therein is considered). Moreover, as previously noted, the mining rights associated with the parcels of Pierce Deed A are presented in three excerpts—the "together with" clause, the Exploration Easement, and the Surface Option—which are always set forth as a group.

¶ 63 The plaintiffs' proposed interpretation would yield an absurd result if the Deep Coal was conveyed in all 83 parcels, but the rights to mine, dig, and remove that coal were granted in only 5 of the 83 parcels. See *Muirhead*, 2018 IL App (2d) 170835, ¶ 25. As the defendants point out in

19

their brief, in acreage terms, Pierce Deed A comprises a total of 6929.75 acres.[6] Under the plaintiffs' suggested interpretation, the right to mine, dig, and remove the coal would have been granted in only 460 acres, or 6.6% of the acres of Deep Coal that was conveyed in Pierce Deed A.

¶ 64    At oral argument, when asked how it would be an exercise of common sense to convey the Deep Coal in the 127 parcels of Pierce Deeds A-D, yet grant the right to mine and remove the Deep Coal in only 12 of those parcels, the plaintiffs responded that the right to room and pillar mine was granted in all the parcels, while the right to longwall mine and thereby subside the surface was granted in only the 12 parcels immediately preceding the 12 instances of the "together with" clause. Along this line of argument, in their reply brief, the plaintiffs cite *Jilek v. Chicago, Wilmington & Franklin Coal Co.*, 382 Ill. 241, 245 (1943), which the plaintiffs allege provides an "implied right to obtain or enjoy minerals" as follows: "When the mineral estate is severed from the surface estate the means of obtaining or enjoying it are also granted, and pass with the grant of the minerals, without an express covenant for such purpose." The plaintiffs are essentially citing this case to support their claim that the right to room and pillar mine was granted in all the parcels. We refuse to consider these claims, as they are not supported by the plain language of the Pierce Deeds.

¶ 65    In reviewing the four corners of Pierce Deed A, we find that any reference to mining techniques is indirect at best. Language that may incite inferences as to mining techniques is found in the "together with" clause which grants, *inter alia*, "the right to dig the entire quantity or a less quantity of said coal at the grantee's option." In applying our foregoing review of mining techniques, digging "the entire quantity" intimates that longwall mining may be used, while

---

[6]This information is derived from the legal description of each parcel, which includes a "more or less" approximation of the total acreage included in the parcel, then adding the total acreage from all the parcels.

digging "a less quantity" suggests that room and pillar mining would be required. Either way, the "together with" clause only *expressly* bestowed on the grantee the option to dig either the entire quantity or a less quantity of the coal.

¶ 66 Moreover, language conferring the right to mine, dig, and remove coal in any way, shape, form, or amount is strictly confined to the "together with" clause and is found nowhere else in Pierce Deed A. Again, the plaintiffs urge us to conclude that the "together with" clause applies only to the five parcels immediately preceding the five instances of the clause in Pierce Deed A rather than to the entire *series* of parcels preceding each instance of the clause. Such an interpretation would render the express right to dig the grantee's desired quantity of coal inapplicable to 78 of the 83 parcels. The plaintiffs' suggestion that the right to room and pillar mine was granted in all the parcels mandates a presumption, as there is no language in Pierce Deed A reflecting the same. Accordingly, this claim fails under the four corners rule. See *Urbaitis*, 143 Ill. 2d at 467.

¶ 67 Even if we were to assume, *arguendo*, that the right to room and pillar mine was impliedly granted in all the parcels as the plaintiffs suggest, then the express right to remove "a less quantity" of coal at the grantee's option as set forth in the "together with" clause would be surplusage in the five parcels to which the plaintiffs allege the clause applies. Put another way, the express right to remove "a less quantity" as set forth in the "together with" clause would duplicate the implied right to room and pillar—which the plaintiffs contend applies to *all* the parcels—rendering that language of the "together with" clause as surplusage in the five parcels to which the plaintiffs claim the clause applies. See *Dolley*, 404 Ill. at 513.

¶ 68 Besides the "together with" clause, we also consider the Exploration Easement and Surface Option because these three passages are always presented together in Pierce Deed A. As previously

observed, every instance of the "together with" clause is immediately followed by the Exploration Easement, which is immediately followed by the Surface Option, where present. Moreover, the mining rights associated with the parcels in Pierce Deed A are found exclusively in these three provisions. Accordingly, we consider the applicability of these provisions in a group context. See *Urbaitis*, 143 Ill. 2d at 467 (to determine intent, the deed is looked at as a whole and every word therein is considered); see also *Platt*, 351 Ill. App. 3d at 329 (every clause was inserted deliberately and for a purpose).

¶ 69    The rights set forth in the Exploration Easement include the rights of "ingress and egress over the surface of said lands above said coal, for the purpose of prospecting and drilling for coal under said lands, and the right to erect such structures as are reasonably necessary to the carrying out of such work ***." Again, Deep Coal was conveyed in all 83 parcels. It would be an absurd construction to only grant the right to prospect and drill for coal in only 5 of the 83 parcels. See *Muirhead*, 2018 IL App (2d) 170835, ¶ 25. Accordingly, like the "together with" clause, common sense also requires an interpretation that the rights in the Exploration Easement apply to all 83 parcels in Pierce Deed A, rather than only the 5 parcels immediately preceding the "together with" clause as urged by the plaintiffs. See *Peckham*, 36 Ill. at 46.

¶ 70    Likewise, the Surface Option allowed the grantee 10 years to purchase surface acreage at a certain price per acre for the building of railroad tracks and various structures necessary to mine, market, obtain, refine, and remove the coal. It would defy common sense to interpret the Surface Option to apply to only 5 of the 83 parcels. The five parcels are noncontiguous. Accordingly, if the right to build railroad tracks were granted in only five parcels as the plaintiffs suggest, any railroad tracks built would result in a disconnected railroad, which is an absurd result. See *Muirhead*, 2018 IL App (2d) 170835, ¶ 25.

22

¶ 71    When questioned at oral argument how common sense would allow the building of a disconnected railroad on noncontiguous parcels, the plaintiffs responded that the Mining Act of 1874 (Mining Act) (now 765 ILCS 505/1 (West 2016)) granted the right of eminent domain over lands owned or occupied by others, thereby solving any problems with disconnected railroads. This argument fails, as it violates the four corners rule. Nothing in Pierce Deed A indicates that it was in any way intended to be governed by the Mining Act. Moreover, even if we were to assume, *arguendo*, that the Mining Act did govern, the language in the Surface Option granting the right to build railroads and other structures would be surplusage and rendered meaningless. See *Dolley*, 404 Ill. at 513. For the stated reasons, we conclude that common sense requires a determination that each instance of the "together with" clause, Exploration Easement, and Surface Option applies to the entire series of parcels preceding it and encompasses all 83 parcels within Pierce Deed A. See *Peckham*, 36 Ill. at 46.

¶ 72    The plaintiffs argue that under the defendants' proposed interpretation, repeating the virtually identical "together with" clause and Exploration Easement five times in Pierce Deed A is surplusage and renders such repeats meaningless. See *Dolley*, 404 Ill. at 513. The plaintiffs contend that the "together with" clause and Exploration Easement would not have been asserted five times unless they were intended to apply separately to the five parcels immediately preceding them. We disagree.

¶ 73    Again, the "together with" clause is presented as a group with the Exploration Easement and the Surface Option and we consider them as such. The Granting Clause of Pierce Deed A conveys the Deep Coal in "the following described real estate ***." Pierce Deed A sets forth that described real estate in five separate series of parcels. After each series, Pierce Deed A provides the rights corresponding to that series as denoted in the "together with" clause, Exploration

23

Easement, and Surface Option, if present. We find the parties intended to separate the parcels into five series, declare the mining rights associated with each series, and set forth the Surface Option and price per acre, if applicable, to that particular series. The existence of a Surface Option and the price per acre within each Surface Option is what distinguishes each series of parcels and the associated mining rights from the next.

¶ 74 The plaintiffs further argue that if the parties intended for subsidence rights to apply to all parcels, the "together with" clause would have been situated at the end of Pierce Deed A alongside the oil and gas reservation and the waiver and release of homestead rights and worded similarly to show that subsidence rights were waived and released in all parcels from "One (1) to Eighty Three (83), both inclusive." Again, we disagree. First, the "together with" clause sets forth a portion of the mining rights associated with the parcels. The oil and gas reservation and release of homestead rights at the foot of Pierce Deed A have nothing to do with the mining rights corresponding to the coal conveyed in the parcels described earlier in the deed.

¶ 75 Moreover, to reiterate, the subsidence rights conveyed in the "together with" clause were grouped with the rights conveyed in the Exploration Easement and Surface Option. Had the "together with" clause been placed at the end of the deed, alongside the oil and gas reservation and release of homestead rights, only the Exploration Easements and Surface Options would have remained in their respective positions at the end of each of the five series of parcel descriptions. A reading of the Exploration Easement and Surface Option in isolation from the "together with" clause is nonsensical. The Exploration Easement provides: "*And together with* the right of ingress and egress over the surface of said lands above said coal \*\*\*." (Emphasis added.) The fact that the Exploration Easement begins with the word "and" logically indicates that was meant to follow a separate but related provision and cannot be logically read in isolation. The "together with" clause

24

provides: "TOGETHER with the right to mine, dig and remove the coal \*\*\*" (emphasis in original), followed by the Exploration Easement, which provides: "*And together with* the right of ingress and egress \*\*\*" (emphasis added). These two clauses logically go together, and they would be nonsensical if separated from each other. See *Dolley*, 404 Ill. at 513.

¶ 76    Additionally, the Surface Option provides the grantee 10 years to buy surface acreage at a certain price per acre to build various structures "necessary or desirable in the mining, refining, obtaining, marketing and removing of said coal." Like the Exploration Easement, the Surface Option would be meaningless if read in isolation. See *id*. Rather, the Surface Option only makes sense when preceded by the "together with" clause and Exploration Easement, as the Surface Option offers the right of a purchase that would be necessary or desirable only if the rights set forth in the "together with" clause and Exploration Easement were implemented. Without the rights in the "together with" clause and Exploration Easement being implemented, there would be no need for the Surface Option. In looking at the deed as a whole (*Urbaitis*, 143 Ill. 2d at 467), it only makes sense that the "together with" clause, Exploration Easement, and Surface Option were purposely grouped together and should be construed as a group. Accordingly, we reject the plaintiffs' argument related to the placement of the "together with" clause at the foot of the deed.

¶ 77    We acknowledge the plaintiffs' argument that the "together with" clause could have been implemented 83 times by following the legal description of each of the 83 parcels in Pierce Deed A. However, as previously noted, the parties chose to separate the parcels into five series, declare the mining rights granted in each series, then set forth the Surface Option and price per acre, if applicable, to that particular series. The existence of a Surface Option and the price per acre within each Surface Option is what separates each series of parcels and the mining rights associated therewith from the next series. Because there are five series of parcels, only five instances of the

25

grouping of the "together with" clause, Exploration Easement, and Surface Option were necessary. Repeating the "together with" clause under the circumstances would have been surplusage, given the parties' decision to group the parcels into five series as they did. See *Dolley*, 404 Ill. at 513.

¶ 78                                 C. *Pierce Amendment*

¶ 79    We next consider an amendment to Pierce Deed A, which further confirms the intent of the parties and supports our conclusion. Although the plaintiffs contend that the Pierce Amendment is parol evidence and may not be considered, Illinois law establishes that an instrument is to be interpreted as a whole, and when amendments are made, courts consider all parts of the agreement to determine the intent of the parties. *Palos Community Hospital v. Humana, Inc.*, 2020 IL App (1st) 190633, ¶ 34; see also *Downers Grove Associates v. Red Robin International, Inc.*, 151 Ill. App. 3d 310, 318 (1986) (where agreement is modified by separate agreement, both instruments are read together to determine parties' rights and obligations).

¶ 80    Pierce Deed A was recorded on March 15, 1913. Subsequently, on September 24, 1913, the parties to Pierce Deed A—George S. Roberts and May Roberts and Charles I. Pierce— executed an agreement that was recorded on October 6, 1914. In the agreement, in order to satisfy modifications to a separate contract between George S. Roberts and May Roberts and T.M. Mitchell and Anne Mitchell, dated July 20, 1912, the parties to Pierce Deed A agreed to amend the Surface Option price per acre for five parcels described in Pierce Deed A as follows:

> "Whereas, in order to fulfill the conditions of the contract between the parties hereto, dated
> July 20, 1912 and the modifications thereto, it is essential to reduce the option price per
> acre for the sale of the surface of certain portions of said coal lands in one of said deeds, to
> wit parcels 68, 69, 70, 71, and 82 in the deed dated March 12, 1913, and recorded on March

26

18, 1913[7] in Book 113, page 204, of the records of Williamson County, Illinois to Sixty ($60) Dollars per acre."

¶ 81    This amendment confirms that the Surface Option—along with the "together with" clause and Exploration Easement—are not solely applicable to the parcels immediately preceding them. PARCEL NOS. 68, 69, 70, and 71 are in the second series of parcels in Pierce Deed A. None of these parcels are immediately followed by the "together with" clause, Exploration Easement, and Surface Option, as these appear following the legal description of PARCEL NO. 75 at the end of the second series. Pursuant to Pierce Deed A, the Surface Option applicable to the second series of parcels offers the purchase of surface acreage at the price of $100 per acre. The amendment changes this price to $60 per acre only for PARCEL NOS. 68, 69, 70, and 71 in this series. Had the parties of the Pierce Deeds not intended for the Surface Option and corresponding price of $100 per acre established for this series in Pierce Deed A to apply to all of the parcels in the series, there would have been no need for the amendment to change the price of PARCEL NOS. 68, 69, 70, and 71 to $60 per acre.

¶ 82    The same logic applies with regard to the amendment changing the Surface Option price of PARCEL NO. 82 in Pierce Deed A. PARCEL NO. 82 is found in the fifth series of parcels in Pierce Deed A, and it is not immediately followed by the "together with" clause, Exploration Easement, and Surface Option, as these appear following the legal description of PARCEL NO. 83 at the end of the fifth series. Pursuant to Pierce Deed A, the Surface Option applicable to this series of parcels offers the purchase of surface acreage at the price of $75 per acre. The amendment changes this price to $60 per acre only for PARCEL NO. 82 in this series. Had the parties of the

---

[7]This is a scrivener's error, as the same deed is referenced earlier in the agreement, indicating that it was recorded on March 15, 1913, and elsewhere in the record the deed itself is marked as recorded on March 15, 1913.

Pierce Deeds not intended for the Surface Option and corresponding price of $75 per acre established for this series in Pierce Deed A to apply to all of the parcels in the series, there would have been no need for the amendment to change the price of PARCEL NO. 82 to $60 per acre.

¶ 83 For these reasons, we find the Pierce Amendment confirms our conclusion that the "together with" clause, Exploration Easement, and Surface Option apply to all 83 parcels of Pierce Deed A.

¶ 84                                III. Additional Considerations

¶ 85 Finally, we observe additional considerations which support our conclusion.

¶ 86                                A. *Last Antecedent Rule*

¶ 87 Assuming, *arguendo*, that the Pierce Deeds are ambiguous, the last antecedent rule is an aid to construction that is utilized when the instrument at hand is considered ambiguous. *State Farm Mutual Automobile Insurance Co. v. Murphy*, 2019 IL App (2d) 180154, ¶ 35. Pursuant to the last antecedent rule, "relative or qualifying words are normally interpreted as modifying those words or phrases which immediately precede them and not those which are more remote." *Illinois Department of Revenue v. Country Gardens, Inc.*, 145 Ill. App. 3d 49, 54 (1986). Applying the last antecedent rule, the plaintiffs point out that the "together with" clause that sets forth subsidence rights immediately follows the individual legal descriptions of only five parcels in Pierce Deed A and emphasize that there is no hint, insinuation, or indication that the subsidence rights apply to any parcels other than those which immediately precede each instance of the "together with" clause. The plaintiffs contend that there is nothing whatsoever between PARCEL NO. 1 and PARCEL NO. 66 to indicate that anything further is included with any of those parcels. They claim that because the "together with" clause, Exploration Easement, and Surface Option first appear in

Pierce Deed A after PARCEL NO. 67, they are clearly applicable to only that parcel and not the preceding 66 parcels. We disagree.

¶ 88    Pursuant to the last antecedent rule, " '[i]n the construction of written instruments a qualifying phrase is to be confined to the last antecedent *unless there is something in the instrument which requires a different construction*.' " (Emphasis added.) *Hardware Mutual Casualty Co. v. Curry*, 21 Ill. App. 2d 343, 349 (1959) (quoting *City Trust, Safe Deposit & Surety Co. of Philadelphia v. Lee*, 204 Ill. 69, 71-72 (1903)); see also *Johnson-Maday v. Prudential Insurance Co. of America*, 276 Ill. App. 3d 371, 374 (1995) (last antecedent rule in which courts normally construe qualifying phrases as applying only to the phrase immediately preceding the qualification does not apply when context of entire instrument requires the application of the qualification to more remote phrases). Moreover, courts reject a rigid, technical application of the last antecedent rule if it leads to an absurd reading of the instrument. *Sykes v. Schmitz*, 2019 IL App (1st) 180458, ¶ 39. Again, the cardinal principle of deed construction that supersedes all other principles is determining the intent of the parties (*id.*) and we look at the instrument as a whole to determine that intent (*Urbaitis*, 143 Ill. 2d at 467).

¶ 89    As previously established, construing the rights set forth in the "together with" clause, the Exploration Easement, and the Surface Option as applicable to only the five parcels as the plaintiffs suggest defies common sense and yields an absurd result. See *Peckham*, 36 Ill. at 46; *Muirhead*, 2018 IL App (2d) 170835, ¶ 25. To avoid such absurdity, we refuse to apply the last antecedent rule in the strict manner proposed by the plaintiffs. See *Sykes*, 2019 IL App (1st) 180458, ¶ 39. Moreover, other language in Pierce Deed A requires a different construction. *Hardware*, 21 Ill. App. 2d at 349. The context of Pierce Deed A as a whole requires an application of the last antecedent rule to make the "together with" clause, Exploration Easement, and Surface Option and

their associated rights applicable to phrases more remote than those which immediately precede them. *Johnson-Maday*, 276 Ill. App. 3d at 374.

¶ 90    To that regard, we incorporate our previous analysis and conclusion based on our review of the unambiguous Pierce Deeds. In addition, we observe that the Granting Clause of Pierce Deed A conveyed "all *the coal* lying below the depth of [125] feet from the surface of *the following described real estate* ***." (Emphases added.) Thereafter, subsequent to the legal descriptions of PARCEL NO. 1 through PARCEL NO. 67, we observe the "together with" clause, which grants, *inter alia*, "the right to mine, dig, and remove *the coal* therefrom," along with "the right to dig the entire quantity or a less quantity of *said coal* at the grantee's option" without liability for injury or damage resulting from the mining and removal of "*said coal*" as well as the right "to ventilate and drain the mines and *said coal* *** and the right to mine and remove so much of other minerals *** necessary in order to properly mine and remove *said coal*." (Emphases added.)

¶ 91    The meaning of "the coal" and "said coal" provided in the "together with" clause is derived from an antecedent—namely "coal"—which somewhere precedes these references in the "together with" clause. The plaintiffs allege that the "together with" clause only applies to PARCEL NO. 67. However, there is no reference to the antecedent "coal" in PARCEL NO. 67. Nor is there any reference to the antecedent "coal" in any of the parcel descriptions. We must revisit the Granting Clause—before any parcel descriptions appear—to find the antecedent and determine the meaning of "the coal" and "said coal" as referenced in the "together with" clause.

¶ 92    In the Granting Clause, we discover that the antecedent of "the coal" and "said coal" found in the "together with" clause, is "all the coal lying below the depth of [125] feet from the surface of the following described real estate ***." Reading Pierce Deed A as a whole, as this court must (see *Urbaitis*, 143 Ill. 2d at 467), it is apparent that the term "the coal" in the first right of the

30

"together with" clause—the right to mine—as well as the term "said coal" in the second right of

the "together with" clause—the right to dig the entire quantity or a less quantity—along with the

next instance of "said coal" in the third right of the "together with" clause—the right to subside—

and the instance of "said coal" in the fourth right of the "together with" clause—the right to drain—

all refer back to the Deep Coal in the series of parcels that make up "the following described real

estate" as set forth in the Granting Clause. Put another way, all the references to "the coal" and

"said coal" in the "together with" clause find their antecedent in the Granting Clause.

¶ 93    Besides the "together with" clause, we also examine the Exploration Easement which

grants "the right of ingress and egress over the surface of *said lands* above *said coal* \*\*\*."

(Emphases added.) We adopt the same analysis and reasoning from our previous discussion and

likewise conclude that "said coal" in the Exploration Easement also finds its antecedent in the

Granting Clause, namely the Deep Coal in the series of parcels that make up "the following

described real estate."

¶ 94    Similarly, the Surface Option allows for the purchase of "portion[s] of the surface of the

*above described real estate*" to build various structures necessary in the "removing of *said coal*"

provided that "no land may be purchased for mining operation within [300] feet of the principal

buildings located on said surface of *said real estate*." (Emphases added.) In reading Pierce Deed

A as a whole (see *id*.), "the above described real estate" and "said real estate" found in the Surface

Option and "the following described real estate" found in the Granting Clause are referring to the

same thing. Namely the entire series of parcels between those references. Moreover, the Surface

Option provides the option to purchase surface acreage to build structures that are necessary or

desirable in the "removing of *said coal*." (Emphasis added.) We adopt the aforementioned

explanations to reach our conclusion that "said coal" refers back to the Deep Coal in the Granting

31

Clause and applies to the entire series of parcels between the Granting Clause and the Surface Option. There is no antecedent in the description of PARCEL NO. 67—or any other parcel—that can make sense of these textual references. For the stated reasons, we reject the plaintiffs' proposed application of the last antecedent rule and find the context of Pierce Deed A requires an application of the rule to make the qualifying "together with" clause, Exploration Easement, and Surface Option applicable to phrases more remote than those immediately preceding them. See *Johnson-Maday*, 276 Ill. App. 3d at 374. Particularly, they apply to the entire series of parcels preceding them rather than only to the parcel immediately preceding them.

¶ 95                              B. *Source Deeds*

¶ 96     We next consider the Source Deeds that are in the chain of title of the Pierce Deeds and are referenced at the conclusion of each legal description of each parcel within Pierce Deed A. These Source Deeds further confirm the intent of the parties and support our conclusion. There are 83 separate and individual Source Deeds for each of the 83 parcels in Pierce Deed A. Each of the 83 Source Deeds have different grantor(s), while George S. Roberts is consistently the grantee in every Source Deed. A review of the Source Deeds indicates that the subsequently executed Pierce Deeds were modeled after the Source Deeds in wording, structure, and application. Except for the variance between the names of the grantor(s) and the legal descriptions of the parcels, the Source Deeds are virtually identical and all of them convey, *inter alia*, coal to George S. Roberts.

¶ 97     The same "together with" clause in the Pierce Deeds—that grants subsidence rights—is also found in the Source Deeds. Likewise, the "together with" clause in the Source Deeds is followed by the same Exploration Easement that follows the "together with" clause in the Pierce Deeds. Moreover, Surface Options exist in the Source Deeds for the same parcels set forth in the first series of parcels in Pierce Deed A—PARCEL NO. 1 through PARCEL NO. 67—with the

32

same Surface Option price of $60 per acre as found in the Surface Option applicable to that series within Pierce Deed A.

¶ 98    Likewise, the same "together with" clause, followed by the same Exploration Easement, is found in the Source Deeds for the second series of parcels in Pierce Deed A—PARCEL NO. 68 through PARCEL NO. 75. Surface Options exist in the Source Deeds for the same parcels set forth in the second series of parcels in Pierce Deed A, with the same Surface Option price of $100 per acre as found in the Surface Option applicable to that series within Pierce Deed A.

¶ 99    The "together with" clause, followed by the Exploration Easement, is also found in the Source Deed for PARCEL NO. 76 in Pierce Deed A, with a Surface Option in the Source Deed for this parcel having the same Surface Option price of $70 per acre as in the Surface Option applicable to that parcel within Pierce Deed A.

¶ 100   The Source Deed for PARCEL NO. 77 in Pierce Deed A contains the same "together with" clause and Exploration Easement. Notably, just as Pierce Deed A contains no Surface Option for this parcel, likewise, the Source Deed for this parcel contains boilerplate language for the Surface Option that is crossed out.

¶ 101   Finally, the same "together with" clause, followed by the same Exploration Easement, is found in the Source Deeds for the fifth series of parcels in Pierce Deed A—PARCEL NO. 78 through PARCEL NO. 83. Surface Options exist in the Source Deeds for this series of parcels, with the same Surface Option price of $75 per acre as found in Surface Option applicable to this series within Pierce Deed A.

¶ 102   The information derived from the Source Deeds supports our conclusion that the parcels in Pierce Deed A were intentionally separated into five series and that the clauses following each series—the "together with" clause, Exploration Easement, and Surface Option—declared the

33

mining rights granted in each series and were intended to apply equally to all parcels in the series. The existence of the Surface Options in Pierce Deed A and the price per acre therein distinguishes each series of parcels from the next and is confirmed by the language and structure of the Source Deeds.

¶ 103  Although we concluded that the Pierce Deeds unambiguously conveyed the subsidence rights in all of the parcels, even assuming, *arguendo* that those rights were not expressly conveyed in the Pierce Deeds, the rights were automatically conveyed as a matter of law because the Source Deeds—which are in the chain of title to the Pierce Deeds—conveyed the subsidence rights in all the parcels. See *Corcoran v. Franklin County Coal Co.*, 249 Ill. App. 551, 553 (1928) (release from liability for damages for injury to surface set forth in a deed runs with the land and is binding on subsequent surface owners); see also *Rocking M. Ranch, Inc. v. Sahara Coal Co.*, 217 Ill. App. 3d 162, 168 (1991) (waivers of subjacent support by predecessors in title are recognized and upheld); *Beloit Foundry Co. v. Ryan*, 28 Ill. 2d 379, 388 (1963) (rights appurtenant to real estate are transferred automatically by conveyance of the land, even if not expressly mentioned, and the servient estate continues to be subject thereto until the right is terminated or abandoned); *Parrish v. City of Carbondale*, 61 Ill. App. 3d 500, 505 (1978) (covenants concerning land and enjoyment thereof run with the land, pass with ownership, and are binding on subsequent owners). Notably, the Pierce Deeds reference the chain of title by adding information from the Source Deeds at the end of every legal description of every parcel.

¶ 104  Here, assuming, *arguendo*, that the Pierce Deeds did not expressly convey subsidence rights in the "together with" clause applicable to all the parcels, the appurtenant rights by virtue of the Source Deeds ran with the land and were transferred automatically from George S. Roberts to Charles I. Pierce in the Pierce Deeds, even if the Pierce Deeds never mentioned those rights. See

34

*Beloit*, 28 Ill. 2d at 388. This transfer occurred automatically, by operation of law, because the Pierce Deeds did not expressly reserve or terminate the subsidence rights that George S. Roberts obtained in the Source Deeds. See *id*. Accordingly, Charles I. Pierce acquired subsidence rights in all the parcels of the Pierce Deeds without liability because the Source Deeds conveyed "the right to mine, dig, and remove the coal therefrom *** without leaving any support for the overlying strata, and without liability for any injury or damage which may result from the mining and removal of said coal" in all the parcels.

¶ 105   Finally, to reiterate, the right of subjacent support is absolute and unconditional (*Lloyd*, 210 Ill. at 468), but the surface owner may part with that right by deed or covenant (*Wesley*, 221 Ill. App. at 433), which is precisely what happened in this case. Because the subsidence rights were clearly and expressly waived and released in the Source Deeds (*Mason*, 320 Ill. App. at 353), we find that, as a matter of law, subsidence rights were waived and released in all the parcels of the Pierce Deeds.

¶ 106                                    CONCLUSION

¶ 107   For the foregoing reasons, we affirm the judgment of the circuit court that denied the plaintiffs' motion for partial summary judgment and granted the defendants' motions for summary judgment regarding the construction of the Pierce Deeds that unambiguously conveyed subsidence rights in all 127 parcels of real estate described in the Pierce Deeds.

¶ 108   Affirmed.

2020 IL App (5th) 190339
NO. 5-19-0339
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

| | | |
|---|---|---|
| MITCHELL/ROBERTS PARTNERSHIP, an Illinois General Partnership; REBA L. MITCHELL, Trustee and Beneficiary of the Robert H. Mitchell Resident Trust; CARL INMAN, Independent Executor of the Estate of Russell J. Inman, Deceased; CAROL DEAN CRABTREE; ROBIN LYNNE KEE WILLIAMS; JOHN MILO KEE; NELDA BALDWIN, Personal Representative of the Estate of Beverly B. Adams, Deceased; NELDA BALDWIN, Personal Representative of the Estate of Katherine Baldwin, Deceased; and DAVID SENSENEY, Executor of the Estate of Margueritte Boos, Deceased, | ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Williamson County. |
| | ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 14-MR-285 |
| WILLIAMSON ENERGY, LLC, a Delaware Limited Liability Company, COLT, LLC, a West Virginia Limited Liability Company, INDEPENDENCE LAND COMPANY, LLC, a Delaware Limited Liability Company, and WPP, LLC, a Delaware Limited Liability Company, PAULA NEWCOMB, VINCE SNEED, ROBERT C. WILSON, CHRISTIE BROWN, JONI MILLER, and FANNIE MILLER, | ) ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | Honorable Jeffrey A. Goffinet, Judge, presiding. |

**Rule 23 Order Filed:**      **August 17, 2020**
**Motion to Publish Granted:**      **September 8, 2020**
**Opinion Filed:**      **September 8, 2020**

**Justices:**      Honorable David K. Overstreet, J.

               Honorable Thomas M. Welch, P.J., and
               Honorable Milton S. Wharton, J.,
               Concur

**Attorneys**
**for**
**Appellants**
     Mark S. Johnson, Matthew B. Ferrell, Mark H. Clarke, John R. Schneider, Johnson, Schneider & Ferrell, LLC, 212 North Main Street, Cape Girardeau, MO 63701; F. William Bonan, Bonan, Bonan & Rowland, LLC, P.O. Box 309, McLeansboro, IL 62859; George E. Stigger (*Pro Hac Vice*), 330 Osprey Circle, St. Marys, GA 31558

**Attorneys for Appellees**

John E. Rhine, Bingham, Greenebaum, Doll, LLP, One Main Street, Suite 600, Evansville, IN 477081; Brandon McGrath, Bingham, Greenebaum, Doll, LLP, 255 East Fifth Street, Suite 2350, Cincinnati, OH 45202 (attorneys for Independence Land Co., LLC and WPP, LLC)

G. Patrick Murphy, Patricia S. Murphy, Murphy & Murphy, LLC, 3415 Office Park Drive, Suite D, Marion, IL 62959; Brian A. Glasser, Bailey & Glasser, LLP, 209 Capitol Street, Charleston, WV 25301; Jeffrey R. Baron, 8012 Bonhomme Avenue, Suite 300, Clayton, MO 63105 (attorneys for Williamson Energy, LLC and Colt, LLC)

C. Michael Witters, 1001 Oak Street, Mt. Carmel, IL 62863 (*amicus curiae* brief for the Illinois Coal Association)

_____